[No. 2141]

## STATE OF NEVADA, RESPONDENT, *v.* J. FRANK TRANMER, APPELLANT.

[154 Pac. 80]

1. CONVICTS—CRIMES—POWER TO PUNISH.

Where accused was serving a life sentence in the state prison for murder, the district court had jurisdiction to order his production before it for trial on another murder charge.

2. HOMICIDE—CORPUS DELICTI—PROOF.

The *corpus delicti* of a murder may be established by inference from facts as well as from positive testimony.

3. HOMICIDE—SUFFICIENCY OF EVIDENCE.

In a trial for murder, evidence *held* sufficient to establish the *corpus delicti*.

4. CRIMINAL LAW—WITNESSES—REFRESHING MEMORY—HARMLESS ERROR.

Where, on a murder trial, a witness was allowed to refresh his memory as to a statement made by accused, by reading his testimony at the coroner's inquest, and his testimony given after such refreshing was substantially the same as before, there was no reversible error, since accused was not prejudiced thereby.

5. CRIMINAL LAW—JOINT PRINCIPAL AS WITNESS—IMPROPER QUESTION—MISCONDUCT.

Where, on a murder trial, a principal with accused in the murder, who had been previously convicted and sentenced to death, was produced as a witness by the state, and during the early part of his examination counsel for accused had asked the state in the jury's presence whether it was admitted that witness was then under conviction of a felony and in the state's prison, it was misconduct for the state's counsel to ask the witness whether he was not then in the penitentiary under sentence of death, where the only object of the state's question was to influence the jury to assess the death penalty against accused.

6. CRIMINAL LAW—JOINT PRINCIPAL—CONVICTION—DEATH PENALTY —TESTIMONY.

On a trial for murder, where a joint principal in the crime with accused who had been previously convicted and sentenced to death is called as a witness by the state, it is reversible error to allow the state, for the purpose of influencing the jury to inflict the death penalty on accused, to ask the witness if he is in the state's prison under sentence of death.

7. CRIMINAL LAW—COMPETENCY—CONVICTS—JOINT PRINCIPAL.

One who was jointly indicted with accused for murder and on previous separate trial had been convicted was a competent witness for the state in a murder trial under Rev. Laws, 5419, defining witnesses, and Rev. Laws, 7451, applying section 5419 to criminal actions.

8. CRIMINAL LAW—EXAMINATION OF WITNESS—REMARK OF TRIAL COURT—HARMLESS ERROR.

Where, on a murder trial, the testimony of a witness went solely to the identity of accused, and his participation in the crime had been clearly shown, the remark of the trial judge, made while counsel for defense was reading questions and answers of the witness at a former trial for the purpose of impeaching him, that "* * * there is apparently no inconsistencies or contradictions," there being no substantial conflict between the two testimonies, was harmless error under the statute providing for the disregard of technical errors, where no substantial rights are denied.

9. WITNESSES—REDIRECT EXAMINATION—CONVICTED JOINT PRINCIPAL—OFFERS OF CLEMENCY.

On a murder trial, where, on cross-examination of a witness who had been previously convicted as joint principal in the crime on a separate trial, the defense asked him whether he had talked with the county officers including the district attorney, it was a proper exercise of the court's discretion to allow the state on redirect examination to ask the witness whether he had not been informed that no clemency would be extended to him for testifying in the case, since the inference that offers of clemency had been made might have arisen from such previous question by the defense.

APPEAL from Second Judicial District Court, Washoe County; *Edward A. Ducker,* Judge.

J. Frank Tranmer was convicted of murder in the first degree, and he appeals. **Affirmed.**

[See, also, 35 Nev. 56, 126 Pac. 337, 41 L. R. A. n. s. 1095.]

*J. M. Frame,* for Appellant:

The evidence wholly fails to establish the *corpus delicti.*

In order to prove the *corpus delicti* in a case of homicide, it is necessary to clearly establish the death of the person alleged to have been killed, and that it was produced by the criminal agency of some other person. (*Redd* v. *State*, 40 S. W. 374; *State* v. *Ah Chuey*, 14 Nev. 79, 68 L. R. A. 35; *Wickerhorn* v. *People*, 2 Ill. 128; *Cozzens* v. *Gillespie*, 4 Mo. 82. )

To prove the *corpus delicti*, mere identity of name is not sufficient. (*People* v. *Wong Sang Lung*, 84 Pac. 843; Jones on Evidence, sec. 100; *Byan* v. *Kales*, 31 Pac. 517; *Wickerhorn* v. *People, supra; Cozzens* v. *Gillespie, supra.*)

The lower court, lacking jurisdiction and legal custody of defendant, had no legal right to proceed under the second indictment. (11 Cyc. 1006; 12 Cyc. 196, 197, 220; *Ex Parte Johnson*, 42 L. Ed. 103; *Ewing* v. *Mallison*, 70 Pac. 369; *Missouri P. R. Co.* v. *Love*, 59 Pac. 1072; *State* v. *Miller*, 54 Kan. 244; *Covell* v. *Heyman*, 111 U. S. 182, 28 L. Ed. 390; *State* v. *Chinante*, 55 Kan. 326.) As defendant was already in custody under a judgment and sentence in another cause, the right of the state to proceed with the second indictment was suspended, for the reason that the sentence already pronounced was superior in authority and completely absorbed all right to the custody of the defendant as long as the same was in force. (*Ex Parte Buck*, 120 Mo. 479, 25 S.W. 573; *State* v. *Bell*, 111 S. W. 29; *Ex Parte Meyers*, 44 Mo. 280.)

The witness Urie, being under conviction of a felony, was civilly dead, and incompetent to testify; and his testimony was not competent for the further reason that he was jointly charged with the defendant with the commission of the crime alleged. (Rev. Laws,.7160.)

The comments of the lower court, in the course of the trial, upon certain testimony, were prejudicial to the defendant, and not cured by the failure to except thereto. They were in the nature of an instruction by the court, and consequently a violation of the constitutional right of the defendant. (*State* v. *Tickel*, 13 Nev. 502; *State* v. *Ah Tong*, 7 Nev. 152; *People* v. *Bonds*, 1 Nev. 36: *State* v. *Harkin*, 7 Nev. 381; *McMinn* v. *Whelan*, 27 Cal. 319; *State* v. *Scott*, 37 Nev. 412. )

*Geo. B. Thatcher*, Attorney-General, and *E. T. Patrick*, Deputy Attorney-General, for Respondent:

The *corpus delicti* was completely established. The record shows conclusively that the deceased died within a year and a day of the shooting with which appellant was charged in the indictment, and that she was the same person upon whose body an autopsy was performed. (*State* v. *Kilgore*, 70 Mo. 546; *Sheppard* v. *People*, 72 Ill. 480; *People* v. *Mullen*, 94 Pac. 57; *Cavaness* v. *State*, 43 Ark. 231; *People* v. *Lagroppo*, 90 App. Div. N. Y. 219.)

The lower court had full jurisdiction to try defendant on the second indictment. (*Ex Parte Tranmer*, 35 Nev. 56, 41 L. R. A. n. s. 1095; *Ex Parte Allen*, 196 Mo. 226.)

The testimony of Urie was clearly competent. (Rev. Laws, 7451.)

No objection having been made by defendant to the remarks of the trial court in commenting upon certain evidence, they do not constitute reversible error. (*Gaudette* v. *Travis*, 11 Nev. 151; *Thunder* v. *Brown*, 12 Nev. 86; 38 Cyc. 1324; *V. & T. R. R. Co.* v. *Elliott*, 5 Nev. 358; *Longabaugh* v. *R. R. Co.*, 9 Nev. 271; *McLeod* v. *Lee*, 17 Nev. 103; *Paul* v. *Cragnaz*, 25 Nev. 293.)

Not every unguarded remark of a trial judge is ground for reversal. To be so, it must be shown to be prejudicial to the rights of the party complaining, or at least appear probable that prejudice resulted; and it is ordinarily held that error in making improper remarks is cured by instructing the jury to disregard them. (38 Cyc. 1316; *State* v. *Burwell*, 52 Kan. 686; *Bond* v. *State*, 129 Pac. 666.)

The objection of appellant to the action of the trial court in permitting a witness to refresh his memory, and the criticism of certain conduct of the district attorney in the course of the trial, are extremely frivolous.

A conviction will not be set aside for errors which do not affect the substantial rights of the accused. (Rev. Laws, 7302, 7459; *State* v. *Mircovich*, 35 Nev. 489.)

By the Court, COLEMAN, J.:

The appellant, J. Frank Tranmer, was indicted in the district court of Humboldt County, together with one

Nimrod Urie, for the murder of Maria D. Quilici. Separate trials were ordered, appellant was convicted of murder in the first degree, and the jury fixed the penalty at death. From a denial of a motion for a new trial, and from the judgment of the court imposing the death penalty, an appeal has been taken to this court.

1. At the time the case at bar was set for trial by the district court, appellant was serving a life sentence for the murder of one Eugene Quilici; and, when application was made to that court for an order that appellant be brought from the state prison for trial, appellant, through his attorneys, objected to the making of the order, for lack of jurisdiction. The overruling of the objection is assigned as error. The identical question here involved was before the court in *Ex Parte Tranmer*, 35 Nev. 56, 126 Pac. 337, 41 L. R. A. n. s. 1095, where the question was decided adversely to appellant's contention. Suffice it to say that we have carefully considered the point urged by appellant, and we think that the holding of the court in *Ex Parte Tranmer, supra,* is sustained by both reason and authority, and that no good purpose would be served by discussing the question at length in this opinion. An elaborate note to *Ex Parte Tranmer* may be found in 41 L. R. A. n. s. 1095, where it is stated that the great weight of authority sustains the position of the court in that proceeding. The only later case in point which we have been able to find is that of *State* v. *Rodgers*, 100 S. C. 77, 84 S. E. 304, which is in line with the views expressed in *Ex Parte Tranmer, supra.*

2. It is next urged that the evidence fails to establish the *corpus delicti.* In the case of *State* v. *Ah Chuey*, 14 Nev. 92, 33 Am. Rep. 530, it was held that the *corpus delicti* may be established as well by inference from facts as from positive testimony. In *State* v. *Cardelli*, 19 Nev. 324, 10 Pac. 436, it was said:

"While it is true that a person charged with the commission of a criminal offense is not called upon to answer the charge without satisfactory proof, upon the part of the prosecution, of the *corpus delicti*, yet it is not

essential, in all cases, that there should be any direct evidence upon this point."

Such is the general rule. (Wharton's Criminal Law, 11th ed. sec. 352, citing many authorities.) In 21 Cyc. at p. 1029, it is said:

"The sufficiency of the proof of the *corpus delicti* is a question for the jury."

**3.** The evidence in the present case is quite voluminous, and clearly shows that Eugene Quilici and Maria D. Quilici, his wife, resided at Imlay, Humboldt County, Nevada, on and for some time prior to January 6, 1911; that on that night the defendant and one Nimrod Urie, for the purpose of robbery, went to the saloon which was being run by Eugene Quilici, and shortly after entering the place shot both Quilici and his wife, Maria D. Quilici; that Eugene Quilici died instantly; and that one Maria D. Quilici died at Winnemucca, in the same county, about twenty-five miles from Imlay, on or about the 9th of that month, from a gunshot wound.

It is contended that the evidence fails to show that the Maria D. Quilici who died at Winnemucca was the same Maria D. Quilici who was shot at Imlay. We think the jury had ample evidence before it to justify it in finding that the Maria D. Quilici who died in Winnemucca was the Maria D. Quilici who was shot at Imlay. One Lommori, who was called as a witness on the part of the prosecution, testified as follows:

"Q. Did you know Maria D. Quilici in her lifetime? A. Yes, sir.

"Q. What relationship, if any, existed between you and Maria D. Quilici? A. She was my sister.

"Q. Where did she live? A. At Imlay. * * *

"Q. Mr. Lommori, you realize the fact that the defendant Frank Tranmer or J. Frank Tranmer is being tried for the murder of your sister, do you? A. Yes, sir. * * *

"Q. Was your sister married? A. Yes, sir.

"Q. To whom? A. To Eugene Quilici.

"Q. I will ask you if you were a witness at the coroner's

inquest over the body of your sister, Mrs. Quilici?  A. Yes, sir."

On cross-examination, the witness testified, in part, as follows:

"Mr. Frame (counsel for defendant)—Q. You testified in that preliminary, a short time after the occurrence of the killing of your sister, did you not, Mr. Lommori?  A. Yes, sir, a short time afterwards.  *  *  *

"Q. Now, referring to your testimony given at the preliminary hearing between January 12 and January 19, 1911, the same occurring a few days after the occurrence in which your sister was killed,  *  *  *  I will ask you to state whether you testified as a witness at and before the coroner's jury investigation for the death of your sister Maria D. Quilici, the same being held before Justice Dunn in the month of January, 1911, at Winnemucca, Humboldt County, Nevada, about January 9?  A. I do not remember.

"Mr. Frame—I suppose it was admitted that it was given there?

"Mr. Woodburn (district attorney)—Yes, sir, it was there.  That is correct.  *  *  *

"Q. Did you ever hear, just before the happening of the occurrence in which your sister was killed, of Mr. Quilici having an arrangement to buy the Robinson-Kelley saloon which was situated alongside of. or near the Quilici saloon?  A. Yes, sir.  *  *  *

"Q. Were you at the depot in Imlay on the day following the killing of your sister by some parties, about noon, when Sheriff Lamb brought the two men to the depot?"

From the foregoing extracts from the evidence it will be seen that witness Lommori testified that he knew that the defendant was on trial for the murder of his sister Maria D. Quilici, which was committed January 6, 1911, and that he attended the coroner's inquest over her body at Winnemucca on January 9, three days later, and the preliminary examination which was held a few days thereafter.  Dr. Giroux testified to holding the autopsy in Winnemucca, and of giving testimony at the coroner's

inquest January 9, 1911, which was held over the body of one Maria D. Quilici. We think the evidence is ample to establish the *corpus delicti*. The questions ·asked by counsel for defendant, as quoted, show that he considered the Maria D. Quilici over whose body the coroner's inquest was held to be the same person as Maria D. Quilici, the sister of Lommori.

**4.** Error is assigned, also, to the ruling of the trial court in permitting the witness Urie to refresh his memory by reference to testimony given by him at the former trial. The witness was asked what the appellant said to him after the crime had been committed and when he (witness) told appellant that he had lost his mask, to which he replied:

"Well, he said that was a bright trick and he ought to kill me.

"Q. What is that? A. He said that was a bright trick and he ought to kill me.

"Q. Do you remember the exact words? A. No, I don't know as I can remember the exact words, but something to that effect."

At this point in the proceedings the witness, over the objection and exception of defendant, was permitted to read the testimony given by him at the coroner's inquest:

"Mr. Callahan—After refreshing your memory, can you give the exact language used by the defendant at that time?"

After objection and exception by counsel for defendant, the witness answered:

"I can now after I read that.

"Q. Just give the language used by the defendant in reply to your statement that you had lost your mask. A. I told him I had lost my mask, and he says: 'You are a pretty son of a ——. I ought to plug you right here.'"

Professor Jones, in his work on evidence, at section 878, says:

"In some jurisdictions, it is held that a witness may refer to a former affidavit or deposition given by him for the purpose of refreshing his memory. While in other

states this is not allowed, as it is held that the practice is in violation of the rule that a memorandum to refresh the memory should have been made at or about the time to which it relates"—citing authorities.

Since the killing was on January 6, and the coroner's inquest three days later, it would seem that the reason given by Professor Jones for excluding such testimony does not apply in this case; but we will not undertake to determine what the law on this point is, as the two statements are substantially the same, and we are unable to see that any prejudice could have been done appellant by the ruling of the court.

**5.** Appellant also assigns as ground for reversal the action of the district attorney in asking the following question:

"Mr. Callahan—Q. I will ask you to state, Mr. Urie, if you are not now in the penitentiary of the State of Nevada under sentence of death."

Upon objection being made, it was sustained, and the jury was directed by the court to disregard the question entirely. Soon after this witness had begun to give his testimony, counsel for appellant, in the presence of the jury, and before the question quoted was asked, addressing the district attorney, said:

"Mr. Callahan—I suppose it is admitted that this witness is now under conviction of a felony and is in the state's prison?"

There is in our judgment nothing in the preliminary question or suggestion made by counsel for the defendant, "I suppose it is admitted that this witness is now under conviction of a felony and is in the state's prison?" which sustains the position of counsel for the state in urging, or which would justify this court in saying, that defendant's counsel had "opened up the subject, and in all probability brought to the attention of the jury the real status of the witness Urie." For the purpose of raising the objection to the competency of the witness Urie to testify on behalf of the state, it was necessary for counsel for defendant either to request the opposing counsel to

admit the fact, or to ask leave to prove as a foundation for the objection that the witness Urie was in the state prison under conviction of a felony, and was a codefendant of the defendant Tranmer.

While we will hold that the objection to the competency of the witness Urie is without merit, the objection was anything but one of a frivolous character, as suggested in respondent's brief on appeal. The question has never before been raised in the courts of this state, and there are but few cases directly in point. A consideration of the following cases where the question has been considered will be sufficient answer to the charge that the objection of counsel for defendant was "frivolous": *People* v. *Labra,* 5 Cal. 183; *People* v. *Newberry,* 20 Cal. 440; *Ex Parte Stice,* 70 Cal. 55, 11 Pac. 459; *McGinness* v. *State,* 4 Wyo. 115, 31 Pac. 978, 53 Pac. 492.

Independent of the question of the competency of Urie as a witness, defendant had the statutory right to show that the witness was under conviction for a felony, for the purpose of affecting his credibility as a witness. This right counsel for the state were unquestionably aware of. The record contains the following statement made by assistant counsel for the state:

"Mr. Woodburn—Now, if your honor please, we have no objection to that question being stricken out, and the jury being instructed to disregard it. It was made in good faith, and we thought we would just show the status of this witness, because it goes to his credibility, and it was done under no desire to prejudice the defendant, and it was first suggested through counsel's question as to the status of this man as to where he was living at this time, and, if counsel insists, we are satisfied to have the jury instructed that they may disregard the testimony of the witness on that point."

6. From a reading of the record we are impressed that the purpose of the question was to get before the jury the fact that Urie was under sentence of death for his participation in the murder of the Quilicis, for the purpose of influencing the jury when they came to consider the

question whether they should impose death or life
imprisonment as the penalty for defendant's crime. In
our opinion the asking of the question was highly repre-
hensible conduct on the part of counsel asking it, and if
it had been answered would have constituted reversible
error.

It should be borne in mind, in the consideration of this
assignment of error, that the defendant Tranmer was
already under conviction of murder in the first degree,
with sentence of life imprisonment, for the murder of
Eugene Quilici, and that from the judgment in that case
no appeal had been taken. There was no purpose sought
to be accomplished, or which could be accomplished, by
the trial of the defendant Tranmer for the murder of
Maria Quilici, except to obtain, if possible, a conviction
of first-degree murder, with the death penalty imposed.
There was, however, no duty imposed upon counsel rep-
resenting the state to bring before the jury facts clearly
incompetent for the purpose of influencing the jury in
fixing the penalty which the law authorized it to prescribe.
Upon the contrary, counsel for the state owed a duty to
defendant not to attempt to offer such evidence. At the
time the question objected to was asked, counsel for the
state undoubtedly knew what the testimony of the witness
Urie would be. They knew that such testimony, in a
measure at least, was having the indorsement of the
representatives of the state as to its verity, and that
Urie's testimony made him out to be less blamable than
the defendant Tranmer; that, if Urie spoke the truth,
Tranmer was the instigator of the robbery which led to
the murder; that Urie was a reluctant participant, acting
under a certain degree of compulsion, and fired none of
the shots which resulted in the death of the Quilicis. In
view of this testimony, it is not hard to conceive of a fact
that might have a greater influence in persuading the
jury to impose the death penalty upon Tranmer than the
fact that another jury had imposed the death penalty upon
Urie, who might under the evidence have been regarded
as morally, if not legally, less guilty than Tranmer.

It is no answer to the seriousness of this assignment that the question was suggested by the prior question and objection of counsel for defendant. It was not so suggested. Counsel for the state, upon this appeal, we think should have presented some more substantial basis for holding this assignment of error to be without merit. In our opinion, the improper question may be regarded as not prejudicing the substantial rights of defendant solely because it was not answered and because the jury was promptly instructed "to entirely disregard the question."

It is only in recent years that a number of states have so changed their criminal codes as to permit the jury in first-degree murder cases to fix the penalty at death or life imprisonment. In but few cases has the question arisen as to whether evidence, not admissible upon the question of the guilt or innocence of the defendant, may nevertheless be offered for the purpose of influencing the jury as to the penalty in their discretion to be imposed. This question was touched upon by the Supreme Court of California in the recent (1915) case of *People* v. *Witt*, 148 Pac. 928. In the opinion in that case, Angellotti, C. J., speaking for the court, said:

"It is not claimed that the offered testimony was relevant or material on the issue as either guilt or degree of crime, but simply that, inasmuch as the jury had the right to assess the punishment in the event of conviction at either death or life imprisonment, appellant was entitled to have admitted for their consideration evidence as to matters not otherwise relevant or material. We are of the opinion that our law does not contemplate any such independent inquiry on a trial for murder, and that the determination of the jury, under the provisions of section 190, Penal Code, as to death or life imprisonment, is necessarily to be based solely on such evidence as is admissible on the issues made by the indictment or information and the plea of the defendant.

See, also, *State* v. *Thorne*, 41 Utah, 414, 126 Pac. 286, Ann. Cas. 1915D, 90.

7. It is next insisted that the trial court erred in

overruling appellant's objection to the competency of witness Urie to testify in behalf of the state. In support of this assignment of error, it is said:

"First, that Urie, being under conviction of a felony, was disqualified as a witness except in cases where called at his own request and in his own behalf. Second, for the further reason that the record discloses that Urie was jointly indicted and jointly charged with the defendant. * * * "

It was provided by section 1441 of the Compiled Laws of Nevada (1873) that:

"Persons against whom judgment has been rendered upon a conviction for felony, unless pardoned by the governor, or such judgment has been reversed on appeal, shall not be witnesses."

This court, in an opinion written by Mr. Chief Justice Beatty, in *State* v. *Foley,* 15 Nev. at page 73, 37 Am. Rep. 458, said:

"It may be that the tendency of enlightened opinion and of recent legislation in other states and countries is against the rule which absolutely excludes the testimony of a convict; it may be that it is an unwise and impolitic rule; but it is unquestionably the law of this state. Not only is the common law unaltered by statute in this particular, but in civil practice it is expressly reaffirmed. (Comp. Laws, 1441.) This shows that the legislature approves the policy of the common-law rule, and we cannot hold that it is less essential in criminal than in civil cases; we feel bound, on the contrary, to maintain it as strictly in one class of cases as in the other."

This opinion was rendered in 1880. It is significant that at the next session of the legislature, in 1881, the section quoted was repealed.

It is provided by section 5419, Revised Laws, that:

"All persons, without exception, otherwise than as specified in this chapter, who, having organs of sense, can perceive, and perceiving can make known their perceptions to others, may be witnesses in any action or

proceeding in any court of this state. Facts which, by the common law, would cause the exclusion of witnesses, may still be shown for the purpose of affecting their credibility."

There is no provision in the chapter prohibiting persons charged with, or convicted of, a crime, from being called as witnesses. The section just quoted is made applicable to criminal as well as civil actions by section 7451, Revised Laws. In the case of *Burgess* v. *Helm,* 24 Nev. 242, 51 Pac. 1025, Mr. Justice Bonnifield, in commenting upon section 5419, Revised Laws, *supra,* said:

"The evident object the legislature had in view in enacting the above provisions was to abrogate the general common-law rule which rendered incompetent, as witnesses, in an action or proceeding, the parties thereto or persons having a direct interest in its results, except, as provided in certain subsequent sections, among which is section 379, which declares 'that no person shall be allowed to testify, when the other party to the transaction is dead, or when the opposite party to the action or person for whose immediate benefit the action or proceeding is prosecuted or defended is the representative of a deceased person, when the facts to be proved transpired before the death of such deceased persons.'"

We do not see how the legislature could have used more significant language. What was the intention of the legislature in making the section in question applicable to criminal cases? This was the first section in chapter 1 of title 11 (page 405) of Compiled Laws of 1873, and section 1441, *supra,* was the fifth section of that chapter. When the attention of the legislature was called to section 1441, *supra,* by the opinion of Mr. Chief Justice Beatty, it was promptly repealed; and, in view of the action of the legislature in repealing it, we must conclude that the legislature meant exactly what it said, that "all persons, without exception," should be competent witnesses, and that facts which, at common law, would disqualify a witness, might be considered as

affecting his credibility.  We are of the opinion that the court did not err by its ruling.

8.  Counsel for defendant, during the cross-examination of the witness Lommori, for the purpose of impeaching him by showing that he had testified contrary to the testimony which he gave upon direct examination, read certain questions propounded to him and answers given by him at a former trial, and asked him if he gave such testimony.  During the reading of the former testimony, the presiding judge made the remark:

"As far as you have gone and read the testimony into the record, there are apparently no inconsistencies or contradictions."

This remark by the court is assigned as error.  The attorney-general concedes that it was error for the court to make the remark, but claims that it was harmless.  We have read the testimony of the witness Lommori with great care, and are unable to see that there is any substantial conflict between his testimony given on the trial and the testimony given at the previous hearing.  This being true, it would seem that the remark of the court was without prejudice.  Furthermore, the point on which it was sought to impeach this witness went solely to the question of the identity of the defendant; that is, of connecting him with the crime.  To our mind his participation in the crime is clearly shown; there can be no doubt about it.  Consequently, it would seem that in any event the remark was harmless.  Mr. Chief Justice Talbot, in *State* v. *Mircovich,* 35 Nev. at page 490, 130 Pac. at page 766, called attention to our statute, which provides that the court shall disregard technical errors where no substantial rights are denied, and said:

"This court has often applied this statute in murder and other cases, and refused to set aside convictions or remand actions for new trials for errors which did not affect the substantial rights of the accused."

The witness Urie, at the time of the trial in the district court, was under sentence of death for the

murder of Mrs. Quilici. On cross-examination, counsel for the defendant inquired of this witness if he had talked with the officers of Humboldt County, including the district attorney, and he said he had. Upon the completion of the cross-examination, the following questions were asked by the district attorney and answers given by the witness:

"Q. I call your attention to last Sunday evening, and ask you to state whether you had a conversation with Mr. Woodburn and myself, here in the county jail. A. Yes, sir; I don't remember what evening it was.

"Q. Who else was present at the time? A. Mr. Burke.

"Q. The sheriff? A. The sheriff.

"Q. Any one else? A. Yes, there was a deputy, I guess; I don't know his name.

"Q. I will ask you to state whether or not at the time you were distinctly informed that there would be no consideration of any kind extended to you for testifying in this case.

"Mr. Frame—I object to the question as incompetent, irrelevant, and immaterial, and for the further reason that it is not proper redirect examination, and that it calls for a conversation, or conversations, that are in no way related to the case.

"The Court—The objection may be overruled.

"A. No, none that I remember.

"Mr. Frame—Note an exception, if your honor please, upon the grounds stated."

9. The ruling of the court is assigned as error. It is the contention of the state that the inference from the examination of counsel for defendant was that some promise had been made to the witness Urie, and it was the purpose of this examination to rebut that inference. Counsel for the defendant, during the argument on the objection, stated in the presence of the jury:

"I did not ask him whether he had received any promises. It is true that inference may be drawn."

The court must exercise some discretion in ruling upon such objections. He saw the witness upon the stand and

heard him testify, and was in a good position to know just how the cross-examination impressed the jury upon the point in question. We cannot say that the court abused its discretion.

The judgment and order denying the motion for a new trial are affirmed, and the district court is directed to fix a time and make the proper order for having its sentence carried into effect by the warden of the state prison.

*Per Curiam:*

Petition for rehearing denied.