# WARD *v.* DANIELS

No. 2812

September 5, 1928.                    269 P. 913.

*C. C. Ward,* Appellant and Attorney, pro se:

*Green & Lunsford,* for Respondents:

## OPINION

By the Court, DUCKER, J.:

This is an appeal from an order of the above-entitled court denying appellant's motion for an order directing respondent to deliver to the administrator of said estate certain moneys in possession of respondent alleged to belong to said estate. The administrator filed in said court a complaint for conversion and nondelivery of property of said estate, wherein it was alleged that Mrs. M. L. Daniels of Hawthorne, Mineral County, Nevada, had money and other property belonging to said estate which she had withheld and concealed and converted to her own use, and had refused after demand by the administrator to deliver the property to him. Citation was

issued thereon directing respondent to appear before said court and show cause why she should not answer, under oath, concerning said property.

On the 15th day of October, 1927, respondent appeared with her counsel in response to the citation, and was examined upon her oath concerning the matters set out in the complaint. Her testimony is substantially as follows: At all times during the year 1927 she was matron in charge of the Mineral County hospital, at Hawthorne, Nevada. On the 7th day of June, 1927, Sven August Peterson was brought to said hospital for medical and hospital attention. On the arrival of Peterson at the hospital she took possession of his personal effects, among which were twenty-eight dollars in cash, a deposit book of the Inyo County Bank, at Bishop, California, showing a balance on deposit in that bank in the name of Peterson in the sum of $4,000, and four cashier's checks, issued by the cashier of the Lone Pine Branch of said Inyo County Bank, for the sum of $100 each, or a total of $400. On the 8th day of June Peterson drew a check for $4,000 upon said bank in favor of respondent and gave it to her as a present. Thereupon the administrator objected to the answer of the witness, on the ground that it was incompetent for the reason that it attempted to state facts concerning a transaction between the witness and a person since dead, out of which transaction the witness was then attempting to establish a benefit to herself. The objection was sustained and the answer stricken out.

The respondent further testified that, at some time between the 7th and the 11th days of June, 1927, the said Peterson indorsed the four cashier's checks and gave them to respondent, stating that he desired her to keep said checks for the purpose of paying his funeral expenses, and if there was any left over, that respondent was to keep the surplus as a gift. An objection was also made to this answer. It was sustained and the answer stricken out. The respondent testified further substantially as follows:

On the 10th day of June, 1927, Peterson assigned to

respondent a passbook for said savings account in said bank, which assignment was acknowledged before S. T. Kelso, county clerk of the county of Mineral, State of Nevada. The check for $4,000, passbook and assignment were presented to said bank on June 11, 1927, and the amount of $4,000 was transferred to the account of respondent, together with an additional sum of $80 as interest on said deposit. Peterson died in the said Mineral County hospital on the 11th day of June, 1927.

After his death respondent cashed the four cashier's checks and out of the proceeds paid the sum of $328.28 on account of the funeral expenses, and on June 15, 1927, delivered to said county treasurer all of the personal property of deceased which she had received belonging to said Peterson, except the checks, the money in bank, and $28 which Peterson had upon his person when he arrived at the hospital. On or about the 15th of June respondent caused the sum of $4,080, which prior to the death of Peterson had been on deposit in his name in said bank, to be withdrawn therefrom and to be transferred to her own account in another bank.

In response to examination by her counsel respondent again stated that, prior to the time of Peterson's death and during the time he was in said hospital, he gave to her his check and passbook on the Inyo County Bank as a gift to herself, and indorsed and gave to her four cashier's checks on the Lone Pine Branch of the Inyo County Bank, for $100 each, with the request that she was to use the proceeds thereof to pay his funeral expenses and accept as a gift to herself all that might be left over after paying said expenses; and that she did accept the above-mentioned gifts and claimed the money as realized from said checks as her own, except so much as was paid out by her on account of funeral expenses as aforesaid. To these answers, so far as they related to facts concerning a transaction between the witness and the deceased, administrator entered his objections, but there was no further ruling upon the point raised.

The proceedings were taken under and in pursuance

of sections 5953 and 5954 of the Revised Laws of Nevada. The former section reads in part:

"If any executor or administrator, heir, devisee, legatee, creditor, or other person interested in the estate of any deceased person shall complain, on oath, to the district judge that any person has, or is suspected to have concealed, converted to his or her own use, conveyed away or otherwise disposed of any moneys, goods, chattels, or effects of the deceased, or that he has in his possession or knowledge any deeds, conveyances, bonds, contracts or other writings, which contain evidence of, or tend to disclose the right, title or interest of the deceased in or to any real or personal estate, or any claim or demand, or any last will of the deceased, the said judge may cause such person to be cited to appear before the district court to answer upon oath upon the matter of such complaint. * * *"

The latter section, as amended by Stats. 1925, p. 335, provides in part:

"If upon such examination it shall appear that such person has concealed, converted to his or her own use * * * any moneys, goods or chattels of the deceased, * * * the district court may make an order requiring such person to deliver any such property or effects to the executor or administrator. * * *"

It is insisted by appellant that the showing made on the hearing was sufficient to require the district court to make an order requiring respondent to deliver the moneys in question to appellant by virtue of the provision last quoted. The position taken is that title to the moneys in question was shown on the hearing to have been in Peterson shortly before his death, and that no competent evidence was adduced at the hearing showing a transfer of title to respondent.

■ It must be conceded that title to disputed property cannot be adjudicated under these provisions. Similar probate provisions are found in the statutes of other states. While in some of these states the object is the discovery, and in others to compel the production and delivery of property, it is well established in these jurisdictions that such provisions confer no power upon the

court to determine a question of title between an estate and a person in possession of personal property claiming ownership thereof. Koerber v. Superior Court, 57 Cal. App. 31, 206 P. 496; Barto v. Harrison et al., 138 Iowa 413, 116 N. W. 317; In Re Manser's Estate, 60 Ore. 240, 118 P. 1024; Humbarger v. Humbarger, 72 Kan. 412, 83 P. 1095; State ex rel. Cohen v. District Court, 53 Mont. 210, 162 P. 1053; Hoehn v. Struttmann, 71 Mo. App. 399; Richardson v. Daggett (D. C.), 24 App. 440; 23 C. J. pp. 1184, 1185, par. 409; Schouler Ex'rs and Adm'rs. sec. 270; 2 Woerner's American Law of Administration (2d ed.), sec. 325. In the section last quoted Judge Woerner, in his discussion of such summary provisions and decisions bearing thereon, states his conclusion as follows:

"Hence it is not the proper remedy to enforce the payment of a debt or liability for the conversion of property of the estate, or to try contested rights and title to property between the executors and others."

In Koerber v. Superior Court et al., supra, the court said:

"The main question presented by this proceeding, is whether or not the court, sitting in probate, in the exercise of its jurisdiction, pursuant to sections 1459, 1460, and 1461 of Code of Civil Procedure, may try and determine questions of title to personal property. The trial court expressed grave doubts about it, and, in view of the decisions of the supreme court of this state, there can be no question that such power does not exist, and that any attempt to exercise such authority is in excess of the probate jurisdiction. Ex Parte Casey, 71 Cal. 269; 12 P. 118; Ex Parte Hollis, 59 Cal. 406; Levy v. Superior Court, 105 Cal. 600, 38 P. 965, 29 L. R. A. 811; Estate of Klumpke, 167 Cal. 415, 139 P. 1062. It has also been held in other jurisdictions, in construing statutes similar to ours, that the power of the probate court ends with the discovery of the property and the enforcement of the remedial provisions of the statute, and does not extend beyond that, so as to allow the court to adjudicate the title to the disputed property. In Re Robert's Estate, 48 Mont. 40, 135 P. 909; Barto v. Harrison et al.,

138 Iowa 413, 116 N. W. 317; In Re Manser's Estate, 60 Or. 240, 118 P. 1024; Humbarger v. Humbarger, 72 Kan. 412,. 83 P. 1095, 115 Am. St. Rep. 204."

In Humbarger v. Humbarger, supra, the court said:

"The purpose of the proceeding is to make discovery and compel production of the property of an estate suspected of having been concealed, embezzled, or conveyed away, but it cannot be employed to enforce the payment of a debt or. liability for the conversion of property of an estate, or to try controverted questions of the right to property as between the representative of the estate and others."

Speaking of a similar statute, the court in Richardson v. Daggett said:

"The general purpose of section 122 was to furnish a prompt remedy in the probate court for the discovery of the assets of estates in administration therein that may have been concealed, and their reduction to possession when so discovered. But we are unable to find a further intention to confer upon the. probate court the jurisdiction to determine the question of the actual ownership of such property when the title thereto is claimed by the representatives of the estate on one hand and the party in actual possession on the other. The practical effect of a contrary construction would be to remit to the probate court, sitting as a court of equity, the final determination of the title to all personal property claimed by the representatives of the estate as against adverse holders thereof; for the extension of the jurisdiction would be accomplished by the allegation that they had been concealed. There would seem to be no doubt that the allegation in this case was made in good faith, and had foundation in the surrounding circumstances set forth; but its legitimate object was attained by the discovery sought and elicited. Had there been no adverse title claimed by the respondent an order of delivery would have followed as a matter of course. But, when the respondent gave a description of the articles in controversy, and at the same time claimed the title adversely, the provisions of section 122 were fully satisfied. All

that remained for the probate court to do was to terminate the proceeding and leave the parties to their remedies in courts of general jurisdiction, either at law or in equity as the conditions might determine."

We will not further review decisions interpreting statutes similar to ours. They are uniform in holding that the power to determine title is not conferred, and we reach the same conclusion in regard to the provisions of our probate law.

■ It is claimed by appellant that respondent's testimony asserting ownership to the moneys in question adduced by the questioning of her counsel should have been stricken out by order of the court, as it was during her examination by counsel for appellant, and that, with such testimony out of the record or disregarded, there is no evidence of title adverse to the estate. We think that the evidence was properly in the record for the consideration of the trial court. It was counsel's business to insist upon a ruling on his objection, which was not done.

■ Again, the trial court was not bound to strike the testimony upon the objection made, even if objectionable upon the ground stated, for the reason that the objection was made to the answers and not to the questions which elicited them. No motion was made to strike the testimony. There is nothing to indicate that the questions were of such a nature as not to apprise opposing counsel of the answers sought to be elicited, nor is there anything to indicate that counsel was otherwise deprived of an opportunity to properly place his objections. State v. Clarke, 48 Nev. 134, 228 P. 582.

The testimony of the respondent as to the circumstances under which she claims to have become the owner of the money was, therefore, properly in the record for the consideration of the trial court. It constitutes substantial evidence tending to show title and right of possession in respondent. Consequently the trial court was bound to deny the motion. It is only where it clearly appears that title is in the estate, and that the possession is wrongfully withheld, that the probate court can, under

section 5954, decree that the possession be delivered to the executor or administrator.

The order of the probate court should be affirmed.

It is so ordered.