IN THE MATTER OF THE PARENTAL RIGHTS AS TO
NEIL M. DUMAIS, A MINOR
GEORGE BARRA, PROBATION OFFICER IN AND FOR THE COUNTY OF NYE, STATE OF NEVADA, APPELLANT, v. GEORGE DUMAIS AND EMILIE DUMAIS, RESPONDENTS.

No. 4308

October 24, 1960                              356 P.2d 124

*William P. Beko,* District Attorney, Nye County, for Appellant.

*Diehl and Recanzone,* of Fallon, for Respondents.

## OPINION

By the Court, PIKE, J.:

Petitioner Barra, as probation officer of Nye County, sought an order terminating the parental rights of the natural parents of the above named minor, then about two years of age. The petition filed May 28, 1959 alleged that both parents had neglected and refused to provide properly for the child, and that they were unfit parents. The proceedings were brought pursuant to the provisions of NRS 128.010–128.140. This is an appeal from an order dismissing the petition and ordering that the minor child be restored to his natural parents.

At the hearings on the petition held on September 12, 1959 and February 4, 1960 a number of witnesses, including petitioner and the district attorney of Nye County, testified concerning the neglect of the child by the parents at Manhattan, in said county, during a period of not more than two weeks in August and September 1958. The proof of neglect and failure to provide properly and care for the child during that period is convincing.

The child at that time was an infant of less than one

and a half years of age, and the youngest of five children, the eldest of whom was 11. During that period the parents were seeking to take over the operation of a combination grocery store and bar, and to clean the premises and pipe running water thereon, doing the work themselves. The three-room deteriorated wooden structure served as business premises and the residence of the family. The premises had only the most meager of furnishings. The entire family slept in a single room, the parents on a box spring and mattress, and the five children on a mattress resting on the floor.

In early September 1958, after the Dumais family had been in Manhattan for about two weeks, their residence there was terminated under the following circumstances. Prior to coming to Manhattan the parents had uttered and negotiated certain checks in connection with their operation of a produce route in another part of the state, and had issued and negotiated more checks in connection with the taking over and operation and purchasing of food and other supplies for the grocery store and bar in Manhattan. When certain of these checks were not honored upon presentation for payment, a civil suit followed and criminal proceedings were commenced against each of the parents at Fallon, Churchill County, Nevada. The deputy sheriff from Tonopah, the county seat of Nye County, arrived in Manhattan for the purpose of effecting the arrest of the husband and wife upon the charges pending in Churchill County. The warrant was served upon the husband, but the wife was found to be in an unconscious condition apparently resulting from self-administered medication. Accordingly, the wife was taken to the nearest hospital at Tonopah, with the husband accompanying her there. She was subsequently transferred to the hospital at Fallon. After the parents had been placed on probation on the charges against them, the four elder children rejoined their parents and have been with them since. The parents and the four elder children lived in Fallon except for a brief period of not more than three months when they lived near Gerlach, in northern Washoe County, until they left Nevada and moved to Oregon in mid-December 1959.

They were residing in Oregon at the time of the said February 4 hearing.

There was no regular foster home available in Nye County. The child Neil remained with a Doctor and Mrs. Brown of Nye County until May 1959. The minor was then placed with a childless couple, Mr. and Mrs. Bruno Skanovsky, also of Nye County, where he continues to reside. The Skanovskys have provided him with a good home and proper care.

Petitioner on this appeal designates two specifications of error as requiring reversal of the trial court, (1) insufficiency of the evidence to sustain the judgment of dismissal and (2) the admission of certain hearsay evidence.

(1) In addition to the witnesses whose testimony tended to show neglect and failure to provide proper care on the part of the parents, both parents and a Mrs. June Quilici, state welfare worker, testified personally before the court, and the Browns gave their testimony in deposition form. Bruno Skanovsky also testified showing the growth, development, and improvement in health of the child while living with Skanovskys. The majority of the witnesses who testified to the conditions of neglect of the child, the child's paleness, listlessness and poor physical condition, and to the father and mother of the minor being unfit parents, were residents of Manhattan. They based their testimony upon their observations made during the said two weeks' period.

There appears no substantial contradiction to the testimony that the living conditions at Manhattan of the Dumais family, including the minor Neil, now about three and a half years of age, were sordid and neglectful by even minimum standards.

However, the evidence shows that later the parents and four elder children had lived under better conditions at Fallon. Mrs. Quilici testified that on the two occasions in the fall of 1959, a year after the Dumaises had left Manhattan, when she visited such house, the living conditions there were generally neat and acceptable, that the appearance and health of the children were excellent, and the relationship between them and their parents was

good. Mr. Dumais had a job, Mrs. Dumais part-time work, and at least one of the elder children was attending school. The living conditions which she observed were far different and better than the squalor, dirt and neglect which prevailed when the family was at Manhattan. It is recognized that the conditions which the Manhattan residents observed, served as a proper basis for the corrective action instituted by the county authorities and their efforts to bring about proper care and living conditions for the minor. While the improved living conditions at Fallon did not include the minor as a member of the household there, they did tend to establish a rehabilitation of the parents and conduct on their part resulting in improved living conditions for their children. Added to this was certain testimony given by Mrs. Quilici, tending to show, somewhat prospectively it is true, the possibility of a continuance of better living conditions and employment for Mr. Dumais, as hereinafter discussed. The testimony of Mrs. Quilici in this latter regard referred to a report of that general import which she had received from a probation officer in Oregon.

The trial judge, after reviewing the evidence before it, and commenting upon the significance of the finality of an order terminating parental rights and of separating the minor not only from his natural parents, but from the other children in the family, stated his view that the best interests of the child were of paramount consideration, that the evidence was insufficient to justify the granting of the relief sought, and dismissed the petition. There was in fact substantial evidence tending to show such a rehabilitation on the part of the parents between the date of their separation from the minor children in September 1958 and the date of the hearing on February 4, 1960 as to support the order of dismissal, and such order will not be disturbed on this appeal.

(2) The testimony given by the witness Mrs. June Quilici, based upon her investigation made at the request

of the trial court, included her reference to the substance of a report she had received from a probation officer in Oregon. That report stated, according to the witness' testimony, that although the Oregon probation officer did not know the Dumaises he did know the relatives with whom they were staying, that their living conditions were good, and that, as employment possibilities in the area were excellent, the probation officer considered that Mr. Dumais should be able to carry out the plans which the relatives had made for the Dumaises to stay with them and have a lot and build a home on a portion of the premises owned by the relatives. The testimony pertaining to the contents of the Oregon probation officer's report was obviously hearsay. Prior to making any reference to the contents of the report, the witness testified that she had received such report. No objection being interposed, she concluded her direct testimony by reference to the report's substance. After cross examination of the witness on matters not related to the hearsay testimony, but which elicited further testimony concerning the report, counsel interposed an objection to the hearsay testimony. The court overruled such objection as not timely and thereafter denied a motion to strike the testimony. Under these circumstances we find no error on the part of the trial court in overruling petitioner's objection to the testimony or denying petitioner's motion to strike the same as hearsay, for the reason that neither the objection nor motion was timely made. The hearsay evidence having been received without objection, the court was entitled to consider it. In Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500, the court cited with approval Sherwood v. Sissa, 5 Nev. 349, 355, where this court held, "If evidence secondary or hearsay in its character be admitted without objection, no advantage can be taken of that fact afterwards, and the jury may, indeed should, accept it as if it were admissible under the strictest rules of evidence." Duplantis v. Duplantis, 50 Nev. 234, 236, 255 P. 1014; Killian v. Hubbard, 69 S.D. 289, 9 N.W.2d. 700, 146 A.L.R. 708.

Judgment affirmed.

McNamee, C. J., and Badt, J., concur.