FRANK FOSS, APPELLANT, v. THE STATE OF
NEVADA, RESPONDENT.

No. 7751

March 25, 1976 · 547 P.2d 688

*Horace R. Goff,* Public Defender, for Appellant.

*Robert List,* Attorney General, and *George E. Holt,* District Attorney, Clark County, for Respondent.

## OPINION

By the Court, GUNDERSON, C. J.:

Convicted by jury of first degree murder and second degree kidnapping, appellant contends the district court erred by: (1) advising the jury that witnesses implicated in the crime had asserted their Fifth Amendment privilege against self-incrimination, (2) admitting out-of-court statements of a coconspirator, (3) allowing appellant's ex-wife to testify about conversations during marriage, (4) permitting appellant's ex-wife to testify that she previously had testified against appellant and one William Marquette, and (5) denying appellant's motion to strike certain evidence. We reject all contentions.

In February, 1972, appellant's wife, Francine Foss, moved from El Paso, Texas, to Las Vegas, where she commenced divorce proceedings. Shortly thereafter, Francine met the victim, Gordon Brady, who helped her find a job and a place to stay. When appellant discovered Francine's whereabouts, he ventured to Las Vegas to induce her to return. While in Las Vegas, appellant threatened his wife, and announced that a contract had been issued on Gordon Brady's life. Evidence at trial indicated appellant had hired Dwayne Gunter to kill Brady. On March 2, 1972, the last time Brady was seen alive, Gunter picked him up at his residence.

1. At trial, the State desired to call as witnesses Gunter and Marquette, both of whom had been constantly mentioned throughout the trial. Outside the jury's presence, Gunter and Marquette told the court they refused to testify and, if called, would assert their Fifth Amendment privilege against self-incrimination. The court ruled that the State could properly

call the two; however, when they refused to remove their prison clothes, the court instead informed the jury:

"Ladies and Gentlemen of the jury. The State has called a witness, Mr. William Marquette. Mr. Marquette has indicated to the Court that if called to testify he would invoke his Fifth Amendment privilege against self-incrimination. The Court has determined that Mr. Marquette's invocation of the privilege would be proper, and for that reason has excused him from appearing in this proceeding.

"The State has also called Mr. Dwayne Lee Gunter. Mr. Gunter has indicated that he, too, will invoke the Fifth Amendment privilege. Unlike Mr. Marquette, the Court has ruled that Gunter may not invoke the privilege of self-incrimination. But in view of Mr. Gunter's continued refusal, he will not appear as a witness.

"*I want you to listen very carefully to this additional admonishment. You are admonished not to consider the refusal of Mr. Marquette and Mr. Gunter to testify as evidence of the guilt or innocence of the defendant.*" (Emphasis added.)

We do not necessarily approve the wording of this statement. It might have been better, if appellant had requested it, to tell the jury that, through no fault of either the State or the appellant, the witnesses were not available, and then follow with the admonishment not to consider their non-appearance. However, we conclude the court committed no prejudicial error. The court was not obliged to preclude the State from calling Gunter and Marquette merely because they said they would assert their Fifth Amendment privilege. Namet v. United States, 373 U.S. 179 (1963); United States v. Compton, 365 F.2d 1 (6 Cir. 1966). The State's evident purpose was not to prejudice appellant unfairly. Failure either to have Gunter and Marquette testify, or to show they were unavailable, might arguably have left a gap in the State's case. Cf. United States v. Kilpatrick, 477 F.2d 357 (6 Cir. 1973); State v. Cota, 432 P.2d 428 (Ariz. 1967), *cert. denied,* 390 U.S. 1008 (1968). The trial court's admonishment guarded appellant from possible prejudice at least as effectively as permitting the State to call Gunter and Marquette would have done. Cf. Cota v. Eyman, 453 F.2d 691 (9 Cir. 1971), *cert. denied,* 406 U.S. 949 (1972).

2. Appellant next contends that statements concerning the crime Gunter made to his common law wife, after the killing but prior to disposal of the body, were not admissible under

the coconspirator exception to the hearsay rule. NRS 51.035 (3)(e).[1] While appellant does not challenge the existence of a conspiracy, he argues that it ended with the killing of Brady rather than continuing through disposal of the body.

The duration of a conspiracy is not limited to the commission of the principal crime, but can continue during the period when coconspirators perform affirmative acts of concealment. Goldsmith v. Sheriff, 85 Nev. 295, 454 P.2d 86 (1969); cf. Dutton v. Evans, 400 U.S. 74 (1970); State v. Davis, 528 P.2d 117 (Or.App. 1974). "[W]here murder is committed under circumstances such that the body must be disposed of to avoid detection, the conspiracy . . . persists until disposition is accomplished." Gelosi v. State, 255 N.W. 893, 895–96 (Wis. 1934). Here, we believe disposal of the body to avoid detection was an integral part of the conspiracy. Thus, the statements by Gunter to his common law wife were admissible under NRS 51.035(3)(e).

3. The district court permitted appellant's ex-wife, Francine Foss Wilson, to testify against appellant regarding conversations which occurred during their marriage. These conversations took place in the known presence of third persons and consisted of threats against the lives of Francine and Brady. Appellant contends that NRS 49.295 prevented Francine from testifying to any communication, confidential or otherwise.[2]

Appellant's reliance on NRS 49.295 is misplaced. While it is true that NRS 49.295 refers to "any communication," we deem this to mean confidential communications. This approach is consistent with our case law construing a similar predecessor

[1] NRS 51.035(3)(e) provides:
" 'Hearsay' means a statement offered in evidence to prove the truth of the matter asserted unless:
"3. The statement is offered against a party and is:
"  .  .
"(e) A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

[2] NRS 49.295 provides in pertinent parts:
"A husband cannot be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent. Neither a husband nor a wife can be examined, during the marriage or afterwards, without the consent of the other, as to *any communication* made by one to the other during marriage, . . ."
(Emphasis added.)

statute. Guyette v. State, 84 Nev. 160, 438 P.2d 244 (1968); see also 8 Wigmore, Evidence § 2336 at 651–652 (McNaughton rev. ed. 1961). Because appellant spoke in the known presence of others, there were no confidential communications warranting protection under NRS 49.295.

4. During cross-examination of Francine Foss Wilson, appellant attempted to show her animus by establishing that he had refused to surrender parental rights to one of their children. On re-direct, for purposes of rehabilitation, the State asked Francine whether she had previously testified against appellant and Marquette. Appellant contends that this question, coupled with Marquette's refusal to testify, was improper. We believe the State's attempt to rebut any inference of animosity on Francine's part, which might have reflected on her truth and veracity, was proper re-direct examination. State v. Tranmer, 39 Nev. 142, 154 P. 80 (1915); cf. State v. Stevens, 421 P.2d 360 (Wash. 1967).

5. Finally, appellant contends that the court erroneously denied his motion to strike certain evidence relating to matters which occurred after Brady's death. At the time the evidence was offered, appellant failed to object. Under these circumstances, the court properly denied his later motion to strike. Barra v. Dumais, 76 Nev. 409, 356 P.2d 124 (1960); State v. Clarke, 48 Nev. 134, 228 P. 582 (1924); cf. Ward v. Daniels, 51 Nev. 125, 269 P. 913 (1928).

Appellant's conviction is affirmed.

BATJER, ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.