NORMAN JOHN CREW, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 14130

January 25, 1984                    675 P.2d 986

[Rehearing pending August 9, 1985]

*Meshbesher, Singer & Spence,* and *Ronald I. Meshbesher,* Minneapolis, Minnesota; and *Goodman, Stein, Terry and Quintana,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

A jury convicted Norman John Crew of first-degree murder in the deaths of Theodore Zappa and Michael Nasse. The jury having recommended a term of life with the possibility of parole on each count, the trial court enhanced each sentence

under NRS 193.165(1)[1] and sentenced appellant to four consecutive life terms with the possibility of parole. We affirm appellant's conviction and sentence.

The record reflects the following facts. On the night of the murders, appellant and his brother, Russell Crew, met with the victims at Zappa's house to discuss a marijuana purchase. The Crew brothers were acting as middlemen to purchase marijuana from Nasse. Later that night, the four men drove to a deserted area near Lake Mead to consummate the transaction. The brothers shot the victims and cut their throats; they then transported the bodies to an area some twenty miles from the scene of the crime and buried them. After the disappearance of the victims was linked with the discovery of the crime scene, appellant gave two statements to the police and disclosed the location of the burial site. The second statement was suppressed because of a *Miranda*[2] violation.

Appellant contends that he was denied a fair trial because the trial court refused to sequester the jury despite widespread public sentiment against appellant and extensive media coverage of his trial.

Under NRS 175.391 it lies within the trial court's discretion to sequester the jurors or to permit them to separate. The trial court's decision will be overturned only if appellant demonstrates that either the nature of the publicity or the jury's actual exposure to it created a probability of prejudice. *See* State v. Wixon, 631 P.2d 1033 (Wash.Ct.App. 1981). In Sollars v. State, 73 Nev. 248, 316 P.2d 917 (1957), we reversed a murder conviction when the trial court failed to sequester the jury despite a daily barrage of inflammatory headlines in the Las Vegas newspapers. In *Sollars* prejudice could be clearly inferred from the nature of the publicity; we do not consider that the coverage of appellant's trial gives rise to the same inference. We note in passing that the most objectionable publicity—that dealing with the contents of appellant's suppressed statement—occurred before the jury was selected and the harm caused would not have been cured by subsequent sequestration. When the publicity is not of such a sensational nature that the mere risk of exposure creates a probability of prejudice, the

[1]NRS 193.165(1) provides that a person who uses a firearm or other deadly weapon in the commission of a crime shall be punished by imprisonment for a term equal to and in addition to the term of imprisonment prescribed by statute for the crime.

[2]Miranda v. Arizona, 384, U.S. 436 (1966). No issue regarding the first statement has been raised on appeal.

danger can be cured by scrupulous admonishment and voir dire of the jury. *See* Pacheco v. State, 82 Nev. 172, 414 P.2d 100 (1966). The record shows that the jurors were examined on voir dire regarding their exposure to news accounts of the crime. The trial court admonished the jurors before each separation and collectively polled them regarding their compliance with the admonishments before giving them their final jury instructions. The publicity surrounding the trial did not create any prejudice that could not be dispelled by adherence to these procedures.

The trial court permitted Detective Maddock to testify that appellant had accompanied the police on their trip to locate the burial site. Appellant points out that the trip occurred immediately after he accompanied Detective Maddock to the police station and gave his second statement, which was later suppressed on account of a *Miranda* violation, and contends that the testimony should have been ruled inadmissible as a fruit of the violation of his constitutional rights. Wong Sun v. United States, 371 U.S. 471 (1963).

Appellant argues that his trip to the police station with Detective Maddock and his subsequent interrogation constituted an illegal arrest in violation of the fourth amendment, and that any evidence derived from the arrest is inadmissible. *See* Taylor v. Alabama, 457 U.S. 687 (1982). We do not agree with appellant's characterization of the events. After a hearing, the trial court found that appellant had voluntarily accompanied Detective Maddock to the police station and that he was not detained there. *See* Krueger v. State, 92 Nev. 749, 557 P.2d 717 (1976). We conclude that no arrest occurred at this time and that appellant's fourth amendment rights were not violated.

Neither can the testimony be excluded as a fruit of the suppressed statement. Absent a direct infringement on fifth amendment rights, a violation of the rules of *Miranda* will not support the exclusion of evidence derived from the statement. Rhodes v. State, 91 Nev. 17, 22, 530 P.2d 1199, 1202 (1975); Michigan v. Tucker, 417 U.S. 433, 445-446 (1974). If appellant's statement had been induced by police threats or promises of leniency, the statement would be involuntary and evidence derived from it inadmissible. *See* Commonwealth v. Meehan, 387 N.E.2d 527 (Mass. 1979). However, the trial court determined, after a hearing, that the statement was voluntary, and we will not disturb the court's finding. Sparks v. State, 96 Nev.

26, 604 P.2d 802 (1980). Since the testimony cannot be traced back to either a fourth amendment or a fifth amendment violation, we hold that its admission was proper.

The prosecution's case rested largely on the testimony of Donald Dowell, who shared a cell with the Crew brothers while they were awaiting trial. Dowell was a former police informant who was in jail on charges of homicide. While a cellmate of the Crews, he was approached by Detective Maddock and asked to give a statement about anything he might have learned from conversations with the Crews. Dowell's attorney worked out a plea bargain and Dowell gave a statement. A week before his testimony Dowell pleaded guilty to voluntary manslaughter and was sentenced to three years probation conditioned upon serving one year in the county jail.

On cross-examination of Dowell, defense counsel read from the statement, pointing out discrepancies between it and Dowell's testimony. At the conclusion of Dowell's testimony, defense counsel put Dowell's attorney on the stand to testify regarding Dowell's arrangement with the prosecution. At that time, the trial court granted the prosecution's motion to admit the statement into evidence "for the purpose of there being any inconsistencies that might have been alluded to by counsel." Appellant maintains that the statement constitutes inadmissible hearsay.

To be admissible under NRS 51.035(2)(b),[3] prior consistent statements must have been made at a time when the declarant had no motive to fabricate. Daly v. State, 99 Nev. 564, 665 P.2d 798 (1983); Gibbons v. State, 97 Nev. 299, 629 P.2d 1196 (1981). Since at the time Dowell made his statement his arrangement with the police had yet to be consummated, he clearly had a motive to fabricate. We hold, however, that the statement was properly admitted to rehabilitate Dowell's testimony. Since defense counsel read from the statement to attack Dowell's testimony, the prosecution was entitled to introduce the statement into evidence to clarify the inconsistencies pointed out by counsel. *See* United States v. Baron, 602 F.2d 1248 (7th Cir. 1979); NRS 47.120.[4] As in *Baron,* most of Dow-

---

[3]NRS 51.035(2)(b) provides that a prior consistent statement is not hearsay if it is offered to rebut an express or implied charge of recent fabrication or improper influence or motive.

[4]NRS 47.120 provides:

1. When any part of a writing or recorded statement is introduced by a party, he may be required at that time to introduce any other part of it which is relevant to the part introduced, and any party may introduce any other relevant parts.

2. This section does not limit cross-examination.

ell's testimony was consistent with the statement; the inconsistencies went only to details. Appellant cannot be permitted to use parts of a prior statement to impeach the declarant's testimony and then to withhold that same statement from the jury on grounds of unreliability.

Appellant presents other challenges to the admissibility of Dowell's statement and testimony. He maintains that Dowell was a police informant at the time of his conversations with the Crews and that he had made a secret deal with the prosecution which was not disclosed at trial and which resulted in his early release from jail two weeks after his testimony. *See* United States v. Henry, 447 U.S. 264 (1980); Napue v. Illinois, 360 U.S. 264 (1959); Franklin v. State, 94 Nev. 220, 577 P.2d 860 (1978). After two hearings to determine Dowell's status, the trial court found that Dowell was not an informant at the time of his conversations with the Crews. An examination of the record supports the trial court's finding. Similarly, we will not disturb the trial court's finding that the complete plea bargain was executed before Dowell testified and that it was fully disclosed at trial.

Appellant also contends that his sixth amendment right of confrontation was infringed when the trial court refused to permit him to inquire into Dowell's arrest history.

A defendant must be able to expose facts from which the jury can draw inferences regarding the reliability of a witness. Davis v. Alaska, 415 U.S. 308, 318 (1974). While the trial court has discretion to limit the scope of cross-examination, that discretion only comes into play if as a matter of right sufficient cross-examination has been permitted to satisfy the sixth amendment. United States v. Lindstrom, 698 F.2d 1154 (11th Cir. 1983). The scope of the court's discretion vaires according to whether the cross-examination is directed at attacking credibility or exposing bias. A trial court has broad discretion to restrict cross-examination attacking the witness's credibility and may properly restrict inquiry into a witness's prior felony convictions as opposed to mere arrrests. The court's discretion is more limited, however, when the purpose of cross-examination is to expose bias, and counsel must be permitted to elicit any facts which might color a witness's testimony. Bushnell v. State, 95 Nev. 570, 599 P.2d 1038 (1979). Evidence of Dowell's prior arrests, none of which had resulted in prosecution, was relevant to suggest that Dowell had a history of making deals with the police. The trial court should have permitted the inquiry. Nevertheless, since the jury had before it

facts regarding the circumstances under which Dowell became a police informant as well as the details of his arrangement with the prosecution, we conclude that the basic bias was clearly inferable and that the error was harmless.·

Another important prosecution witness was Russell Crew's former roommate Willie Goodman. While appellant was giving his second statement at the police station, Russell Crew borrowed Goodman's car so that he could remove the bodies from the original burial site. Goodman loaned him the car and went down to the police station to report the conversation. Russell Crew was apprehended before he could carry out his plan. His statements to Goodman were admitted at trial under NRS 51.035(3)(e), which provides that the hearsay rule does not require exclusion of statements made by a co-conspirator of a party during the course of and in furtherance of the conspiracy. Appellant contends that NRS 51.035(3)(e) is inapplicable. We disagree.

■■■■■ ■■ ■■

For NRS 51.035(3)(e) to apply, the existence of the conspiracy must be established by independent evidence. Carr v. State, 96 Nev. 238, 607 P.2d 114 (1980). A prima facie showing of the conspiracy is sufficient. Goldsmith v. Sheriff, 85 Nev. 295, 304, 454 P.2d 86 (1969). Dowell's testimony provided sufficient independent evidence of a conspiracy between appellant and Russell Crew.

■■■■■ ■■

Appellant further contends that under the rule of Foss v. State, 92 Nev. 163, 547 P.2d 688 (1976), if a conspiracy existed, it terminated when appellant and Russell Crew buried the victim's bodies. We see no reason to read *Foss* so narrowly. In *Foss* we recognized that the duration of a conspiracy is not limited to the commission of the principal crime, but extends to affirmative acts of concealment. Russell's plan to move the bodies was intended to avoid detection in case appellant divulged the location of the bodies to the police. The plan was in furtherance of the conspiracy to commit the crime and to "get away with it." Statements made in the course of carrying out the plan were properly admitted under the statute.

Appellant was sentenced to two consecutive life terms with the possibility of parole and each sentence was enhanced under NRS 193.165(1) on grounds that he had used a firearm and a knife in the commission of the crime. Appellant raises several challenges to this sentence.

■■■■■ ■■■

Initially, appellant contends that his sentence was improperly enhanced under NRS 193.165(1) because the weapons used

constituted an element of the crime under NRS 193.165(3).[5] The use of a deadly weapon is not a "necessary element of murder" under NRS 193.165(1). Williams v. State, 99 Nev. 797, 671, P.2d 635 (1983). Appellant also argues that the trial court should not have enhanced his sentence on each count because both counts arose out of the same incident. Enhancement of each count is proper unless there is truly only one offense. The test is whether each count requires proof of an additional fact which the other does not. Woods v. State, 94 Nev. 435, 581 P.2d 444 (1978); Woofter v. O'Donnell, 91 Nev. 756, 542 P.2d 1396 (1975). The killings of Nasse and Zappa were divisible acts and each count was subject to separate enhancement.

Appellant further argues that since the Legislature did not leave the trial court any discretion in imposing a sentence for first-degree murder but reserved that task for the jury, it did not intend that sentence to be further modified. NRS 193.165(1) provides for enhancement of "any term of imprisonment imposed by statute." We see no reason to superimpose upon the statutory language the exception which appellant seeks.

We have considered appellant's other contentions and have concluded that they are without merit. Accordingly, we order appellant's conviction and sentence affirmed.

---

[5]NRS 193.165(3) provides that there is no enhancement under subsection 1 when the use of a firearm or other deadly weapon is a necessary element of the crime.