96 P.3d 751 (2004)
David Wayne CRAWFORD, Appellant,
v.
The STATE of Nevada, Respondent.
No. 40489.
Supreme Court of Nevada.
September 3, 2004.
*753 Philip J. Kohn, Public Defender, and Scott L. Coffee, Deputy Public Defender, Clark County, for Appellant.
Brian Sandoval, Attorney General, Carson City; David J. Roger, District Attorney, James Tufteland, Chief Deputy District Attorney, and George W. McFetridge Jr., Deputy District Attorney, Clark County, for Respondent.
Before ROSE, MAUPIN and DOUGLAS, JJ.

OPINION
PER CURIAM.
David Wayne Crawford was charged, tried before a jury, and found guilty of first-degree murder with use of a deadly weapon. Crawford was subsequently sentenced to two consecutive terms of life with the possibility of parole after 20 years.
Crawford appeals, arguing that the district court erred (1) in instructing the jury on a theory of liability that the State had not raised in its amended information, (2) in refusing to instruct the jury that it had to be unanimous on the burglary allegation before considering the felony-murder charge, (3) in refusing to offer his theory of defense jury instructions, and (4) in curtailing his cross-examination of a witness intended to reveal potential bias. We conclude that Crawford's arguments lack merit, with the exception of his argument that he was entitled to a jury instruction on his heat-of-passion theory of defense. We conclude that the district court's refusal to give such an instruction constitutes reversible error. Accordingly, we reverse Crawford's judgment of conviction and remand this case for a new trial.

FACTS
Crawford and the victim, Gloria Dugan, were romantically involved. At the same time, Dugan was engaged to Michael Laija, who was in Korea serving in the Air Force. Dugan was residing in Laija's home in Las Vegas, but Crawford believed that Dugan and Laija were planning to end their relationship. In fact, Crawford had contacted Laija to inform him that he, not Laija, was going to marry Dugan.
Throughout the weekend leading up to Crawford killing Dugan, Dugan made several excuses as to why she could not see Crawford. On the night of the shooting, Dugan went to visit another man, Michael Lemon, in his Las Vegas apartment to watch a movie. Telephone records indicate that Crawford placed several unanswered telephone calls to Dugan's residence while she was at Lemon's apartment. Crawford was upset by Dugan's avoidance of him and was convinced that she was seeing a third man, so he went to see her to find out where their relationship stood. According to Crawford, he took his gun with him with the intention of perhaps using it to scare Dugan into telling him the truth.
By the time Crawford arrived at Dugan's residence, she had returned home. Crawford and Dugan talked for a while, and Crawford eventually confronted Dugan about whether she was seeing a third man. Crawford did not believe that Dugan was being honest with him. Crawford took out his gun and showed it to Dugan, without pointing it at her, hoping that it would make her take him seriously. In response, Dugan smirked, which caused Crawford to become enraged. Dugan's smirk convinced Crawford that she was indeed seeing a third man, and that she would never leave her fiancé. Crawford reacted by shooting and killing Dugan in what he claimed was the "heat of the moment." Afterward, Crawford, in a hysterical state, called a friend and told her that he had killed Dugan because she was lying to him.
Crawford was eventually arrested and charged by way of an amended information with first-degree murder with use of a deadly weapon:

*754 [U]nder one or more of the following theories of criminal liability, to-wit: (1) by having Premeditation and Deliberation in its commission; and/or (2) by the Defendant having committed the killing in the perpetration or attempted perpetration of a burglary, to-wit: by the Defendant entering 7077 Orange Grove Lane, Las Vegas, Nevada with the intent to assault and/or batter and/or kill the said GLORIA JOANN DUGAN.
The jury returned a verdict of guilty of first-degree murder with use of a deadly weapon. Thereafter, Crawford was sentenced to two consecutive terms of life with the possibility of parole after 20 years.

DISCUSSION
First, Crawford argues that the district court erred in giving the State's burglary instruction because it allowed the State to pursue a theory of felony murder that it did not allege in the amended information. Crawford does not dispute that the burglary instruction given was a correct statement of the law. However, he maintains that the instruction given was too broad and allowed the jury to convict him based on a "bedroom burglary theory," for which he had no notice.[1] The burglary instruction stated: "Any person, who by day or night, enters any house, room, apartment, tenement, shop, warehouse, store, other building, automobile or other vehicle with the specific intent to commit assault and/or battery and/or to kill is guilty of burglary."
The district court has broad discretion in settling jury instructions; consequently, we review a district court's decision regarding jury instructions for an abuse of discretion or judicial error.[2] "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason."[3]
We conclude that the district court did not abuse its discretion in giving the State's burglary instruction, as it was a correct statement of the law.[4] Moreover, the instruction did not permit the State to pursue a new theory of criminal liability. The State did not argue a "bedroom burglary theory" at trial but, instead, argued that Crawford entered Dugan's residence with the intent to assault and/or batter and/or kill her. The State's argument was consistent with the allegations in the amended information; therefore, Crawford's contention that he lacked notice of the State's felony-murder theory has no merit.
Second, Crawford argues that the district court committed reversible error by denying his request to instruct the jury that it had to be unanimous on the burglary allegation before considering the felony-murder charge, given that the jury must determine that a defendant is guilty of every element of the crime with which he is charged. For support, Crawford relies on the United States Supreme Court's decision in Apprendi v. New Jersey.[5] We disagree with Crawford's reading of Apprendi and do not think the case is applicable in this instance.
In Apprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[6] Crawford contends that the holding in Apprendi implies that a jury must agree beyond a reasonable doubt as to the existence of an underlying felony before *755 reaching a felony-murder charge, thus abrogating the United States Supreme Court's prior holding in Schad v. Arizona[7] that a jury does not have to agree on a single theory of first-degree murder to convict.
We do not think that the holding in Apprendi impacts the holding in Schad in the manner asserted by Crawford and, thus, choose to follow Schad as we did in Walker v. State.[8] We reiterate that a jury does not have to agree on a particular theory of first-degree murder in order to convict;[9] therefore, we conclude that the district court did not abuse its discretion in refusing to instruct the jury in the manner requested by Crawford.
Third, Crawford argues that the district court committed reversible error in refusing to give his proposed theory of defense jury instructions, one relating to heat of passion and the other relating to diminished capacity.
We evaluate claims concerning jury instructions using a harmless error standard of review.[10] We have consistently held that "the defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be."[11] The district court may only refuse a jury instruction on the defendant's theory of the case that is substantially covered by other instructions or misstates the law.[12]
In United States v. Lofton,[13] the Tenth Circuit stated, "When a criminal defendant has raised a theory of defense, the trial court should refer to that theory and to the testimony bearing on it and submit the issue with an instruction on the applicable law." Further, the court stated that this kind of clarity is essential in a murder case with a heat-of-passion defense.[14] Thus, the court held that a defendant in a federal murder case who has sufficiently raised a heat-of-passion defense is entitled to an instruction relating to that theory.[15]
Here, the jury was instructed as follows:
The offense of First Degree Murder necessarily includes the lesser offense of Second Degree Murder. If you are convinced beyond a reasonable doubt that the crime of murder has been committed by a defendant, but you have a reasonable doubt whether such murder was of the first or of the second degree, you must give the defendant the benefit of that doubt and return a verdict of murder of the second degree.
Voluntary Manslaughter is a lesser included offense of both First and Second Degree Murder. Thus, you may only return a verdict of Voluntary Manslaughter if you first rule out First and Second Degree Murder. If you are convinced beyond a reasonable doubt that an unlawful killing has been committed by a defendant, but you have a reasonable doubt whether such killing was Murder or Manslaughter, you must give the defendant the benefit of that doubt and return a verdict of Voluntary Manslaughter.
Along with the above instruction, the jury was given a standard voluntary manslaughter instruction. The jury, however, was not specifically instructed on the significance of a finding that Crawford acted in the heat of passion.
As in Lofton, the problem with the instructions given in this case is that they did not inform or suggest to the jury that Crawford's theory of defense was that he killed Dugan in the heat of passion; hence, he should be convicted of manslaughter, not murder. We conclude that the other jury instructions given *756 did not adequately apprise the jury of Crawford's heat-of-passion theory of defense. Because Crawford's heat-of-passion theory was supported by at least some evidence, which, if reasonably believed, could have supported an alternate jury verdict, the failure to instruct on that theory is not harmless error.[16]
Crawford argues that there was clear evidence presented to support an instruction on the theory of diminished capacity. In particular, Crawford contends that the fact that he attempted to commit suicide after shooting Dugan and on several past occasions, that he did not remember much after firing the first shot, and that he had been on medication for depression at the time of the murder corroborated his claim of diminished capacity. We disagree. Because Crawford did not present sufficient evidence entitling him to an instruction on diminished capacity, we conclude that the district court properly refused to instruct the jury on this theory.
Finally, Crawford argues that the district court committed reversible error when it curtailed his cross-examination of Michael Lemon. Crawford contends that he had the right to inquire into Lemon's possible bias, particularly, whether Lemon was romantically involved with Dugan.
The district court has discretion to limit the scope of cross-examination, provided sufficient cross-examination has been permitted to satisfy the Sixth Amendment.[17] We have recognized that the district court's discretion is more limited when the purpose of cross-examination is to expose bias, and counsel must be permitted to elicit any facts that might color a witness's testimony.[18]
In this case, we conclude that the district court did not abuse its discretion in curtailing Crawford's cross-examination of Lemon because there was no evidence that Lemon might have a reason to skew his testimony in any way. Lemon's testimony was merely offered to establish the time that Crawford arrived at Dugan's home, a fact that Crawford did not dispute. Lemon testified that Dugan left his house shortly before 10 p.m.; she called him when she got home; and while they were talking on the phone, the doorbell rang, and Dugan got off the phone. Lemon's testimony essentially confirmed that Crawford arrived at Dugan's residence around 10:25 p.m. Even if Crawford had been allowed to inquire into whether Lemon and Dugan were romantically involved, we do not believe that evidence of a relationship would have affected the jury's perception of Lemon's testimony. Accordingly, we conclude that Crawford was not prejudiced by the district court's refusal to permit him to inquire into Lemon's alleged bias.

CONCLUSION
We conclude that the district court committed reversible error when it refused to instruct the jury on Crawford's heat-of-passion theory of defense. Accordingly, we reverse Crawford's judgment of conviction and remand this case for a new trial.
NOTES
[1] Crawford argues that the amended information merely stated Dugan's address and, thus, did not put him on notice that the State would argue that he committed burglary, not necessarily when he stepped inside the residence, but rather, when he stepped through the threshold of the bedroom where he shot Dugan.
[2] Jackson v. State, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001).
[3] Id.
[4] See NRS 205.060(1) (providing that "[a] person who, by day or night, enters any house, room, apartment, tenement, shop, warehouse, store,... or other building ... with the intent to commit... assault or battery on any person or any felony, is guilty of burglary").
[5] 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[6] Id. at 490, 120 S.Ct. 2348.
[7] 501 U.S. 624, 640-43, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion).
[8] 113 Nev. 853, 944 P.2d 762 (1997).
[9] Id. at 870, 944 P.2d at 773.
[10] Barnier v. State, 119 Nev. 129, 132, 67 P.3d 320, 322 (2003).
[11] Vallery v. State, 118 Nev. 357, 372, 46 P.3d 66, 76-77 (2002) (internal quotation marks omitted).
[12] Id. at 372, 46 P.3d at 77.
[13] 776 F.2d 918, 920 (10th Cir.1985).
[14] Id.
[15] Id.
[16] Honeycutt v. State, 118 Nev. 660, 669, 56 P.3d 362, 368 (2002).
[17] Crew v. State, 100 Nev. 38, 45, 675 P.2d 986, 990 (1984).
[18] Id. at 45, 675 P.2d at 991.