OPINION
 

 Per Curiam:
 

 FACTS
 

 In May of 1985, appellant Dwayne Stevens was charged with first-degree murder. On April 24, 1986, Stevens was convicted, pursuant to a jury verdict, of one count each of first-degree mur
 
 *1219
 
 der, robbery with the use of a deadly weapon, possession of a stolen credit card and grand larceny auto. Stevens received a death sentence for the first-degree murder conviction, and was sentenced to prison for two, consecutive, fifteen-year terms for robbery with the use of a deadly weapon, a consecutive six years for possession of a stolen credit card conviction, and a consecutive ten years for grand larceny auto. This court dismissed Stevens’ direct appeal. Stevens v. State, Docket No. 17590 (Order Dismissing Appeal, October 21, 1988).
 

 In 1994, this court considered Stevens’ appeal from a district court order denying his second petition for post-conviction relief, and reversed the judgment of conviction and remanded the case for a new trial. Stevens v. State, Docket No. 24138 (Order of Remand, July 8, 1994). On remand, Stevens agreed to plead guilty to second-degree murder with the use of a deadly weapon. On February 9, 1995, the district court sentenced Stevens to prison for ten years for the primary offense of second-degree murder and a consecutive ten-year term for the deadly-weapon enhancement.
 

 Because Stevens had been serving a death sentence, no good time credits had been applied to his sentence; however, after this court reversed the death sentence and the district court resen-tenced Stevens in 1995, prison authorities used the 5-10-12% formula under NRS 209.443 to compute Stevens’ good time credits.
 
 [1]
 
 With the good time credits, Stevens’ first ten-year term had expired on August 29, 1992. Prison authorities then began crediting good time credits against the second ten-year term, starting the 5-10-12% computation anew. Based on these calculations, Stevens’ second ten-year term would expire in April of 1999.
 

 On December 2, 1996, Stevens filed a proper person post-conviction petition for a writ of habeas corpus. Stevens claimed that his good time credits had been miscalculated to his detriment. Subsequently, the Nevada State Public Defender was appointed to represent Stevens. The public defender filed a supplement to the petition on October 28, 1997. In the supplement, counsel explained that prison authorities had erred in computing Stevens’ good time credits by starting the 5-10-12% computation anew at the beginning of his sentence for the weapon enhancement. Counsel argued that Stevens should have continued to receive credit at the rate of 12% days per month.
 

 
 *1220
 
 The state filed its response on November 17, 1997. The state contended that under the law existing both at the time Stevens was resentenced in 1995 and at the time the first ten-year sentence expired in 1992, Stevens’ two ten-year terms were properly treated as separate and distinct sentences for purposes of computing good time credits. Stevens responded on December 4, 1997.
 

 On March 19, 1998, the district court denied Stevens’ petition. The district court concluded that prison authorities had properly computed the good time credits.
 

 Stevens contends that prison authorities should have treated the sentence for the primary offense of second-degree murder and the enhancement sentence for the use of a deadly weapon as a single sentence for purposes of computing good time credits. Stevens therefore concludes that the district court erred by denying his petition. For the reasons discussed below, we agree.
 

 DISCUSSION
 

 In Biffath v. Warden, 95 Nev. 260, 593 P.2d 51 (1979)
 
 (Biffath
 
 I), and Director, Prisons v. Biffath, 97 Nev. 18, 621 P.2d 1113 (1981)
 
 (Biffath II),
 
 this court held that a sentence for a primary offense and the enhancement sentence for the usé of a deadly weapon in the commission of the primary offense should be treated as a single sentence for purposes of computing good time credits and parole eligibility. In Kreidel v. State, 100 Nev. 220, 678 P.2d 1157 (1984), this court reaffirmed the holding in
 
 Biffath II,
 
 and held that
 
 Biffath II
 
 should be applied retroactively because the court’s interpretation of NRS 193.165 (deadly weapon enhancement statute) was both authoritative and foreseeable. However, in Nevada Dep’t Prisons v. Bowen, 103 Nev. 477, 481, 745 P.2d 697, 699-700 (1987), this court expressly overruled
 
 Biffath I, Biffath II,
 
 and
 
 Kreidel,
 
 and held that the primary and enhancement sentences must be treated as separate sentences for all purposes. We directed that the opinion in
 
 Bowen
 
 “be applied retroactively to the extent possible,” but because the opinion was not foreseeable, we stated that “in no case shall this opinion be applied to the detriment of any prisoner sentenced before the date hereof.”
 
 Id.
 
 at 481 n.4, 745 P.2d at 700 n.4.
 

 In this case, the Department of Prisons treated Stevens’ primary and enhancement sentences as separate sentences pursuant to this court’s decision in
 
 Bowen
 
 because that was the law in effect when the district court resentenced Stevens in 1995. Stevens contends, among other things, that the
 
 Bowen
 
 decision should not be applied to him because to do so would violate the
 
 Ex Post Facto
 
 and Due Process Clauses of the federal
 
 [2]
 
 and state
 
 [3]
 
 constitutions.
 

 
 *1221
 
 The Supreme Court has explained that:
 

 To fall within the
 
 ex post facto
 
 prohibition, a law must be retrospective — that is, “it must apply to events occurring before its enactment” — and it “must disadvantage the offender affected by it,’ ’ by altering the definition of criminal conduct or increasing the punishment for the crime.
 

 Lynce v. Mathis, 519 U.S. 433, 441 (1997) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)). By its terms, the
 
 Ex Post Facto
 
 Clause is a limitation on legislative powers and “does not of its own force apply to the Judicial Branch of government.’’ Marks v. United States, 430 U.S. 188, 191 (1977). However, the Supreme Court has held that
 
 ex post facto
 
 principles apply to the judicial branch through the Due Process Clause, which precludes the judicial branch “from achieving precisely the same result” through judicial construction as would application of an
 
 ex post facto
 
 law. Bouie v. Columbia, 378 U.S. 347, 353-54 (1964);
 
 see also
 
 United States v. Burnom, 27 F.3d 283, 284 (7th Cir. 1994); Forman v. Wolff, 590 F.2d 283, 284 (9th Cir. 1978). This “judicial ex post facto” prohibition prevents judicially wrought retroactive increases in levels of punishment in precisely the same way that the
 
 Ex Post Facto
 
 Clause prevents such changes by legislation.
 
 See
 
 Dale v. Haeberlin, 878 F.2d 930, 934 (6th Cir. 1989);
 
 see also
 
 Devine v. New Mexico Dep’t of Corrections, 866 F.2d 339, 344-45 (10th Cir. 1989) (concluding that “the underpinnings of the ex post facto clause compel applying it full force to courts when they enhance punishment by directly delaying parole eligibility”).
 

 The Supreme Court has explained that “[i]f a judicial construction of a criminal statute is ‘unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,’ it must not be given retroactive effect.’’
 
 Bouie,
 
 378 U.S. at 354 (citation omitted);
 
 see also
 
 Holguin v. Raines, 695 F.2d 372, 374 (9th Cir. 1982) (“the principle of fair warning implicit in the
 
 ex post facto
 
 prohibition requires that judicial decisions interpreting existing law must have been foreseeable”). As we expressly recognized in
 
 Bowen,
 
 our decision to overrule the
 
 Biffath
 
 line of cases was not foreseeable.
 
 Bowen,
 
 103 Nev. at 481 n.4, 745 P.2d at 700 n.4.
 

 The next question is whether
 
 Bowen
 
 is being applied retroactively in this case.
 
 See Lynce,
 
 519 U.S. at 441. The key to this question is “what [the defendant] could have anticipated at the time he committed the crime.”
 
 Dale,
 
 878 F.2d at 935;
 
 cf.
 
 
 *1222
 
 Hamilton v. United States, 67 F.3d 761, 764-65 (9th Cir. 1995) (application of version of Sentencing Guidelines in effect at time of resentencing would violate
 
 Ex Post Facto
 
 Clause if it adversely affected the defendant); Story v. Collins, 920 F.2d 1247, 1251 (5th Cir. 1991) (observing that, if a state computes good time credits on the basis of a law that became effective after the offense that resulted in the prisoner’s incarceration, and if that computation is less favorable to the prisoner than the computation he would have received under the law that was effective on the date he committed the offense, the state violates the constitutional provision against
 
 ex post facto
 
 laws); Goldsworthy v. Hannifin, 86 Nev. 252, 468 P.2d 350 (1970) (concluding that legislative amendment defining minimum time for purpose of parole was an
 
 ex post facto
 
 law when applied to an offender for a crime committed before the law was passed). Accordingly, the relevant date of inquiry is the date that Stevens committed the offense.
 
 [4]
 
 At the time that Stevens committed the primary offense in 1985, this court’s decisions in
 
 Biffath I, Biffath II,
 
 and
 
 Kreidel
 
 were still good law. Therefore, this court’s decision in
 
 Bowen
 
 is being applied retroactively in this case.
 

 This is not the end of the inquiry. As set forth above, to violate
 
 ex post facto
 
 principles, the retroactive application of a law or unforeseeable judicial decision also must disadvantage the offender affected by it. We conclude that, assuming that computation of Stevens’ good time credits pursuant to
 
 Bowen
 
 would increase the amount of time that Stevens must spend in prison, applying
 
 Bowen
 
 to Stevens would disadvantage him.
 
 [5]
 

 Cf. Weaver,
 
 450 U.S. at 33 (“By definition, this reduction in gain-time accumulation lengthens the period that someone in [the defendant’s] position must spend in prison.”); Plyler v. Moore, 129 F.3d 728,
 
 *1223
 
 735 (4th Cir. 1997) (retroactive application of statute eliminating eligibility for release from incarceration on furlough six months prior to expiration of sentence “unquestionably has the effect of increasing the length of [the offenders’] incarceration”),
 
 cert. denied sub nom.
 
 Moore v. Cummings, 118 S. Ct. 2359 (1998). Accordingly, assuming that applying
 
 Bowen
 
 to Stevens would increase his sentence, we conclude that to do so would violate the Due Process Clause. However, because the record before this court is insufficient for us to determine whether applying
 
 Bowen
 
 to Stevens would increase Stevens’ sentence, this case must be remanded to the district court for further proceedings.
 
 [6]
 

 CONCLUSION
 

 Based on the foregoing, we conclude that this case must be remanded for the district court to determine whether computation of Stevens’ good time credits based on two, separate, ten-year sentences pursuant to
 
 Bowen
 
 is less favorable to Stevens than computation of the good time credits based on one twenty-year sentence pursuant to
 
 Biffath I.
 
 As explained above, if the computation pursuant to
 
 Bowen
 
 is less favorable to Stevens
 
 (i.e.,
 
 Stevens must spend more time in prison), then application of
 
 Bowen
 
 violates due process. Accordingly, we vacate the district court’s order and remand this case to the district court for further proceedings consistent with this opinion.
 
 [7]
 

 [1]
 

 NRS 209.443 sets forth the formula for computing good time credits where, as here, the offender was sentenced to prison after June 30, 1969, for a crime committed before July 1, 1985. NRS 209.443 provides that good time credits are accrued as follows: 2 months for each of the first 2 years
 
 (i.e.,
 
 5 days per month); 4 months for each of the next 2 years
 
 (i.e.,
 
 10 days per month); and, 5 months for each of the remaining years of the term
 
 (i.e.,
 
 12% days per month).
 

 [2]
 

 U.S. Const. art. I, § 9, cl.3
 
 (Ex Post Facto
 
 Clause); U.S. Const. amend. XIV (Due Process Clause).
 

 [3]
 

 Nev. Const. art. 1, § 15
 
 (Ex Post Facto
 
 Clause); Nev. Const. art. 1, § 8, cl. 5 (Due Process Clause).
 

 [4]
 

 Because the relevant date of inquiry is the date that Stevens committed the offense, it is irrelevant that he was resentenced after this court decided
 
 Bowen.
 
 The state mistakenly relies on Johnson v. Director, Dep’t of Prisons, 105 Nev. 314, 774 P.2d 1047 (1989), for the proposition that “prison officials act correctly when they compute sentences according to the law in effect at the time.”
 
 Johnson
 
 is not on point for several reasons. In
 
 Johnson,
 
 we rejected the defendant’s claim that certain of his sentences should be recomputed pursuant to
 
 Bowen
 
 because those sentences had been expired prior to our decision in
 
 Bowen
 
 and, as a result, prison officials could not have been expected to anticipate
 
 Bowen
 
 and “any question as to the method of computing those sentences was rendered moot.”
 
 Johnson,
 
 105 Nev. at 314-16, 774 P.2d at 1048-49. Moreover,
 
 Johnson
 
 does not address the
 
 ex post facto
 
 concerns raised in this appeal.
 

 [5]
 

 This conclusion is consistent with
 
 Bowen,
 
 where we explicitly recognized that retroactive application of that decision could work to the detriment of certain prisoners and that to do so would be “unfair.” 103 Nev. at 481 n.4, 745 P.2d at 700 n.4.
 

 [6]
 

 We note that application of
 
 Bowen
 
 likely works to the benefit of most prisoners. As we explained in Bowen:
 

 The result of treating two consecutive sentences as one continuous sentence [pursuant to the
 
 Biffath
 
 line of cases] benefits a minority of prisoners who have no prospect of being paroled. This is because more good-time credits may be earned in the fifth and subsequent years of a sentence than in the first four years.
 
 See
 
 NRS 209.443. For the vast majority of prisoners, however, the result is a significantly longer time behind bars, because prisoners serving multiple consecutive sentences may be paroled from a prior sentence to a subsequent sentence, thus satisfying both sentences concurrently.
 

 103 Nev. at 480 n.2, 745 P.2d at 699 n.2. Moreover, for crimes committed on or after July 1, 1985 but before July 17, 1997, the offender accrues 10 days of good time credits for each month that he serves. NRS 209.446. Thus, offenders who are subject to NRS 209.446 and who committed their offense prior to our decision in
 
 Bowen
 
 would not even enjoy the limited benefit offered by the
 
 Biffath
 
 line of cases.
 

 [7]
 

 Based on our resolution of this issue, we need not reach Stevens’ other contentions.