An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

RICHARD HABERSTROH A/K/A RICKY
HICKEY A/K/A PATRICK JAMES
HICKEY A/K/A GERALD
HABERSTROH A/K/A LEE
DIVINCENT,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63466

FILED

SEP 18 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction in a death penalty case. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

Early in the morning on July 21, 1986, appellant Richard Haberstroh abducted a young woman, Donna Kitowski, from a grocery store parking lot in Las Vegas. He took her into the desert outside the city, robbed her, sexually assaulted her, and strangled her with a ligature. The strangulation caused irreparable brain damage and ultimately Kitowski's death. A jury convicted Haberstroh of first-degree murder, first-degree kidnapping, sexual assault, and robbery, each with the use of a deadly weapon, and sentenced him to death. His judgment of conviction was affirmed on direct appeal. *See State v. Haberstroh*, 105 Nev. 739, 782 P.2d 1343 (1989). Haberstroh eventually obtained relief from the death sentence and a second penalty hearing as the result of post-conviction proceedings. *State v. Haberstroh*, 119 Nev. 173, 69 P.3d 676 (2003). At the second penalty hearing, the jury found two circumstances aggravated Kitowski's murder—(1) the murder was committed while Haberstroh was under a sentence of imprisonment and (2) he had been previously

SUPREME COURT
OF
NEVADA

(O) 1947A

15-28289

convicted of a felony involving the use or threat of violence—and, concluding that the mitigating circumstances did not outweigh the aggravating circumstances, sentenced him to death. This appeal followed.

*Issues relating to jurors*

First, Haberstroh argues that the district court erred by granting the prosecution's challenges for cause against two jurors because their views on the death penalty did not disqualify them from serving on the jury. "The test for evaluating whether a juror should have been removed for cause is whether a prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125 (2005) (internal quotation marks omitted).

With respect to prospective juror Anwar, in her questionnaire she expressed her belief in the death penalty but also indicated her discomfort with it; she expressed that the appropriateness of the death penalty depended on the nature of the case and that life in prison was the better option. Her answers during voir dire reflect a stronger opposition to the death penalty, where she indicated that she would not consider the death penalty because she did not believe "in killing someone as an option for punishment," although she acknowledged that if the crime was significant enough—something akin to mass murder—she might consider the death penalty. When pressed by the district court as to whether she could consider the death penalty, she responded that she could not. As to prospective juror Gregan, he expressed in his questionnaire that he would consider the death penalty where the crime was severe but would not automatically vote for or against it. During voir dire, when asked whether he could consider all possible punishments, Gregan said that he would

prefer not to sit on a death penalty jury and repeatedly expressed discomfort with the death penalty. When pressed by the prosecutor and the district court as to whether he could consider the death penalty, he responded that he could not. We conclude that the district court did not abuse its discretion by excusing these two prospective jurors for cause. *See United States v. Gabrion*, 719 F.3d 511, 528 (5th Cir. 2013) (concluding that trial court did not abuse its discretion by excluding prospective juror who equivocated as to whether he could consider death penalty); *Walker v. State*, 635 S.E.2d 740, 746-47 (Ga. 2006) (same); *State v. Tinsley*, 143 S.W.3d 722, 733 (Mo. Ct. App. 2004) (same).

Second, Haberstroh argues that the district court abused its discretion by dismissing juror Henshaw near the end of trial, over his objection, where there was no misconduct and juror Henshaw indicated that he could be fair and impartial after revealing to the district court that he had been contacted the previous day by an investigator working on behalf of Henshaw's nephew who was a defendant in an out-of-state capital prosecution. When asked if his ability to be fair and impartial in this case was affected by his nephew's circumstances, Henshaw initially responded that he did not believe that it would affect his ability to be fair and impartial but that it caused him to "search [his] soul a little bit more." Henshaw made several subsequent comments about how the information about his nephew affected him but maintained that he could remain fair and impartial. In excusing him, the district court concluded that no misconduct had occurred but acknowledged that Henshaw "did seem emotional in talking about these matters" and had "obviously" thought about his nephew's case and what could potentially happen to him. Noting Henshaw's representation that he could consider all the sentencing

options, the district court nevertheless expressed concern that his performance as a juror would be affected or influenced by emotions and his connection to his nephew's case. Given the district court's broad discretion regarding for-cause challenges, *see Leonard v. State*, 117 Nev. 53, 67, 17 P.3d 397, 406 (2001) (observing that trial court enjoys broad discretion in ruling on for-cause challenges because those rulings involve factual determinations), and its ability to observe Henshaw's demeanor during the inquiry, *see id.* (noting that "[t]he trial court is better able to view a prospective juror's demeanor than a subsequent reviewing court"), we conclude that the district court ruling is supported by the record and there was no abuse of discretion in removing Henshaw.[1]  *See* NRS 16.080 (providing that "[a]fter the impaneling of the jury and before the verdict, the court may discharge a juror upon a showing of . . . any other inability to perform the juror's duty"); NRS 175.071 (providing that "[i]f, before the conclusion of the trial, and there being no alternate juror called or available, a juror dies, or becomes disqualified or unable to perform the juror's duty, the court may duly order the juror discharged").

Third, Haberstroh argues that misconduct occurred when one or more jurors failed to acknowledge during jury selection that they did not believe that a life-without-parole sentence meant that a defendant

---

[1]We reject Haberstroh's contention that reversal is warranted because the alternate juror who replaced Henshaw was unfavorably disposed to him. He did not challenge the alternate juror for cause on any basis and therefore cannot now complain that she was unqualified or unsuitable to serve as a juror. *See Moore v. State*, 122 Nev. 27, 126 P.3d 508 (2006) ("Failure to object during trial generally results in a waiver thereby precluding appellate consideration of the issue.").

would not be eligible for parole. As evidence of this misconduct, he suggests that two notes sent out during deliberations that questioned the meaning of a life-without-parole sentence contradicted the jurors' representations in their questionnaires that they understood that they must assume that a life-without-parole sentence meant the defendant would not be released on parole. In response to the notes, the district court directed the jurors to consult relevant instructions explaining the sentencing options. Because Haberstroh concurred with the district court's response and made no assertion of misconduct below, we review his claim for plain error. *See Saletta v. State*, 127 Nev., Adv. Op. 34, 254 P.3d 111, 114 (2011); *Patterson v. State*, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995). Merely requesting the district court to explain the meaning of a life-without-parole sentence is not convincing evidence of misconduct and absent some indication of an intentional misrepresentation during voir dire, Haberstroh's allegation is nothing more than supposition. *See Maestas v. State*, 128 Nev., Adv. Op. 12, 275 P.3d 74, 85 (2012) ("'[W]here it is claimed that a juror has answered falsely on voir dire about a matter of potential bias or prejudice,' the critical question is whether the juror intentionally concealed bias." (quoting *Lopez v. State*, 105 Nev. 68, 89, 769 P.2d 1276, 1290 (1989))). Accordingly, he has not shown error that is unmistakable from a casual inspection of the record. *Patterson v. State*, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995) (defining "plain" error).

Fourth, Haberstroh argues that the voir dire process was unfair because the district court rejected his request to alternate between the prosecution and the defense with respect to who first questioned each prospective juror on the ground that the prosecution questions the prospective jurors first "under the law." While nothing in the statute or

this court's jurisprudence requires that the prosecution be afforded the first opportunity to query prospective jurors, *see* NRS 175.031, Haberstroh articulates no specific prejudice from the district court's ruling and therefore, we conclude that a new penalty hearing is not warranted on this ground. *See Cunningham v. State*, 94 Nev. 128, 130, 575 P.2d 936, 937-38 (1978) (acknowledging that scope and manner of voir dire falls within the district court's sound discretion and that discretion is afforded considerable latitude on review). We also reject Haberstroh's contention that voir dire was unfair because the district court improperly limited his inquiry into the prospective jurors' willingness to impose a life sentence, as the record shows that he was able to query them about whether they could consider a sentence of life with the possibility of parole. *See Johnson v. State*, 122 Nev. 1344, 1354-55, 148 P.3d 767, 774 (2006) (noting that the scope of voir dire rests with the district court's discretion and its decisions are entitled to considerable deference).

*Challenges to the fairness of the penalty hearing*

Haberstroh contends that his penalty hearing was unfair because the jury was deprived of the opportunity to consider an appropriate sentence. In this, he makes several arguments that we have previously rejected, including that the district court should have granted his request to exclude witnesses from the courtroom during the testimony of other witnesses, *Witter v. State*, 112 Nev. 908, 917, 921 P.2d 886, 892 (1996) (holding that the exclusionary rule does not apply to the penalty phase of a capital trial), *abrogated on other grounds by Nunnery v. State*, 127 Nev., Adv. Op. 69, 263 P.3d 235 (2011); the district court erred by denying his motion to bifurcate his penalty hearing, *see Weber v. State*, 121 Nev. 554, 584, 119 P.3d 107, 128 (2005) (holding that the district court

is not obligated to bifurcate the penalty hearing); and his constitutional due process rights were violated by allowing the State to present the final closing argument, *see Blake v. State*, 121 Nev. 779, 800, 121 P.3d 567, 580 (2005) (rejecting argument that due process concerns require allowing the defense to argue last at the penalty hearing). Haberstroh's arguments provide no compelling reason to abandon our prior decisions. *See Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008) (explaining that under stare decisis doctrine, this court will not overturn precedent absent compelling reason).

Haberstroh next contends that he was unfairly prejudiced by the prosecution's introduction of "other matter" evidence, *see* NRS 175.552(3), including his juvenile and adult criminal history along with uncharged misconduct evidence including allegations that he sexually assaulted three other women. Haberstroh's complaint concerning the "other matter" evidence based on hearsay lacks merit as hearsay is allowed in a capital penalty hearing as long as the evidence is reliable and relevant, and its probative value is not substantially outweighed by the danger of unfair prejudice. *Summers v. State*, 122 Nev. 1326, 1332 n.17, 148 P.3d 778, 783 n.17 (2006). He further argues that much of the "other matter" evidence was highly suspect, impalpable, and stale. He refers to his juvenile and adult criminal history that included offenses for which he was not convicted or the charges were dismissed, specifically noting the evidence that he sexually assaulted two women and evidence linking him to a number of thefts from women that occurred approximately a month after Kitowski's murder. Evidence of uncharged crimes is relevant and "may be admitted at a capital penalty hearing as other matter evidence" because a sentencing decision "should be based on the entirety of a

defendant's character, record, and the circumstances of the offense, but it may be excluded from a capital penalty hearing if it is impalpable or highly suspect." *Nunnery*, 263 P.3d at 249 (internal quotation marks and citations omitted). Although much of Haberstroh's criminal history references offenses and incidents that occurred decades ago, before his current lengthy incarceration for Kitowski's murder, it is no less relevant to the issue of his character and record and presenting that evidence did not render the proceedings unfair.

*Jury instructions*

Haberstroh challenges two jury instructions related to the definition and scope of mitigating circumstances and the district court's decision to strike his argument concerning the deliberative process and failure to give a curative instruction.

Haberstroh first contends that the "moral culpability" language in the jury instruction defining mitigating circumstances should not have been included because it erroneously conveyed to the jury that mitigating circumstances must relate to the offense and explain or justify the offense. This court considered a similar instruction in *Watson v. State* and explained that "'the proper inquiry . . . is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant [mitigating] evidence.'" 130 Nev. Adv., Op. 76, 335 P.3d 157, 173 (2014) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). "A reasonable likelihood is more than a mere possibility that the jury misunderstood the law, but a defendant need not establish that the jury was more likely than not to have been impermissibly inhibited by the instruction." *Id.* (internal quotation marks omitted).

We conclude that there is not a reasonable likelihood that the jury applied the mitigation instruction in a way that limited its consideration of relevant mitigating evidence for three reasons. First, although the first paragraph of the instruction used in this case uses the "moral culpability" language addressed in *Watson*, the instruction allowed the jury to consider as a mitigating circumstance "any desire to extend mercy to the [d]efendant." Second, because all of the mitigating circumstances found by the jurors related to Haberstroh's character or background, the jurors clearly understood that they could consider mitigating circumstances unrelated to the crime itself. Finally, nothing in the prosecutor's arguments suggested to the jury that it could not consider evidence of Haberstroh's character and record as mitigating evidence.

Haberstroh contends that the following jury instruction was erroneous because it implied that the mitigating circumstances had to be related to the crime rather than any reason for a sentence less than death.

> *Murder of the first degree may be mitigated* by any of the following circumstances, even though the mitigating circumstance is not sufficient to constitute a defense or reduce the degree of the crime. Defendant submits the following mitigating circumstances support a sentence less than death.

He proposed an alternative instruction that replaced "Murder in the first degree" with "A sentence of death." We conclude that the district court did not abuse its discretion by giving the instruction. *See Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). The language tracks the language found in NRS 200.035 (circumstances mitigating first-degree murder), and does not imply that mitigation is limited to the circumstances of the offense.

Haberstroh next argues that the district court erred by striking his explanation of the weighing process during opening statements and failing to offer a curative instruction because it was a correct statement of the law under *Evans v. State*, 117 Nev. 609, 636, 28 P.3d 498, 517 (2001). Defense counsel informed the jurors that if any one juror finds that the aggravators do not outweigh the mitigating circumstances, they deliberate on the options of life with or without the possibility of parole. At the prosecution's request, the district court struck that portion of counsel's argument as an incorrect statement of law and advised the jury that it would be instructed later in the proceedings. The district court later acknowledged that defense counsel's opening statement was correct but declined to give counsel's proposed curative instruction and instead instructed the jury on the deliberative process in accordance with *Evans*. While the district court erred by striking the challenged comments, Haberstroh suffered no prejudice because the jury was correctly instructed before deliberations began and jurors are presumed to follow their instructions. *See Leonard v. State*, 117 Nev. 53, 66, 17 P.3d 397, 405 (2001).[2]

*Aggravating circumstances*

Haberstroh argues that the two aggravating circumstances found—he was under a sentence of imprisonment when he murdered

---

[2]Haberstroh asserts that the prosecutor committed misconduct by misrepresenting the law regarding the weighing process at the eligibility phase of the jury's sentence determination. Haberstroh suffered no prejudice because the jury was correctly instructed on the law. Therefore, no relief is warranted on this claim.

SUPREME COURT
OF
NEVADA

(O) 1947A

Kitowski and he had a prior conviction for a felony involving the use or threat of violence—are invalid.

*Under sentence of imprisonment*

Haberstroh argues that the under-sentence-of-imprisonment aggravating circumstance is invalid because the State was precluded from seeking it. In this, he contends that the trial court's decision in his prior penalty hearing that the aggravating circumstance did not apply to persons on parole was equivalent of an acquittal on the aggravating circumstance and therefore double jeopardy precluded the State from seeking it in the second penalty hearing. Because Haberstroh did not challenge the aggravating circumstance on this ground below, we review for plain error affecting his substantial rights. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). We conclude that the State's use of the under-sentence-of-imprisonment aggravating circumstance did not violate double jeopardy principles where the trial court in the first penalty hearing dismissed the aggravating circumstance based on a misunderstanding of the law. *See Poland v. Arizona*, 476 U.S. 147, 149-51 (1986). Therefore, Haberstroh has not demonstrated plain error.

Haberstroh next argues that the under-sentence-of-imprisonment aggravating circumstance is invalid because it violates ex post facto principles as this court did not acknowledge that it applied to persons on parole until years after Kitowski's murder. Because he did not object to the aggravating circumstance on this ground below, his claim is reviewed for plain error affecting his substantial rights. *See Valdez*, 124 Nev. at 1190, 196 P.3d at 477. We have recognized that the Supreme Court has applied ex post facto principles "to the judicial branch through the Due Process Clause, which precludes the judicial branch 'from

achieving precisely the same result' through judicial construction as would application of an ex post facto law." *Stevens v. Warden,* 114 Nev. 1217, 1221, 969 P.2d 945, 948 (1998) (quoting *Bouie v. Columbia,* 378 U.S. 347, 353-54 (1964)). "This 'judicial ex post facto' prohibition prevents judicially wrought retroactive increases in levels of punishment in precisely the same way that the Ex Post Facto Clause prevents such changes by legislation." *Id.* Haberstroh points to *Parker v. State,* 109 Nev. 383, 393, 849 P.2d 1062, 1068 (1993), and *Geary v. State,* 110 Nev. 261, 266, 871 P.2d 927, 930 (1994), as the first cases where this court established that the under-sentence-of-imprisonment aggravating circumstance included persons on parole and suggests that because they were decided after the murder in this case, applying them to him would be an ex post facto violation. In concluding that NRS 200.033(1) encompasses probationers, *Parker.* relied on two cases—*Grant v. State,* 99 Nev. 149, 659 P.2d 878 (1983), and *Adams v. Warden,* 97 Nev. 171, 626 P.2d 259 (1981)—both of which predated Kitowski's murder (1986) and Haberstroh's first trial (1987). In those cases, we concluded that a grant of probation is a suspension of execution of a state prison sentence, not a suspension of the sentence; therefore a person on probation, although not incarcerated, is under a sentence of imprisonment. *Grant,* 99 Nev. at 150, 659 P.2d at 878-79; *Adams,* 97 Nev. at 172, 626 P.2d at 260. While *Grant* and *Adams* do not concern NRS 200.033(1), they were instructive as to the meaning of "under a sentence of imprisonment" at the time Haberstroh murdered Kitowski. Based on our reasoning in *Grant* and *Adams* and the use of NRS 200.033(1) with respect to probationers in other capital cases tried around the time of Kitowski's murder, *see, e.g., Browning v. State,* 124 Nev. 517, 539, 188 P.3d 60, 75 (2008); *Bejarano v. State,* 122 Nev. 1066,

1070, 146 P.3d 265, 268 (2006); *Nevius v. State,* 101 Nev. 238, 243, 699 P.2d 1053, 1056 (1985), the meaning of "under sentence of imprisonment" expressed in *Parker* was not "'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,'" *Stevens,* 114 Nev. at 1221, 969 P.2d at 948 (quoting *Bouie,* 378 U.S. at 354), and therefore applying the aggravating circumstance consistent with *Parker* does not violate judicial ex post facto principles. Therefore, Haberstroh has not demonstrated plain error.[3]

Haberstroh next asserts that the under-sentence-of-imprisonment aggravating circumstance fails to perform the narrowing function required by the Eighth Amendment. He encourages this court to overrule *Parker* and hold that this aggravating circumstance does not apply to parolees and probationers. We decline to overrule *Parker, see Miller v. Burk,* 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008), and further conclude that Haberstroh is not entitled to relief as he fails to adequately explain why the aggravating circumstance fails to perform the constitutional narrowing function where it applies to a discrete group of defendants.

Haberstroh further contends that the prosecution established the under-sentence-of-imprisonment aggravating circumstance through substantial hearsay over his objection, leaving him unable to cross-examine his accusers as to the allegation that he was on parole when

---

[3]We reject Haberstroh's contention that the under-sentence-of-imprisonment aggravating circumstance is unconstitutionally vague on the ground that there was no authority from this court holding that it could apply to a person on parole prior to the decision in *Parker.*

Kitowski was murdered. He suggests that the Sixth Amendment right to confrontation should apply to capital penalty trials, "especially when the evidence at issue applies to an aggravating circumstance that is necessary to establish eligibility for the death penalty." He urges this court to reconsider its contrary decision in *Summers v. State*, 122 Nev. 1326, 1327, 148 P.3d 778, 779 (2006), "insofar as it concerns aggravators and the death penalty." We have affirmed *Summers'* holding, including challenges to the admission of hearsay evidence related to the eligibility prong of Nevada's death penalty scheme. *See Thomas v. State*, 122 Nev. 1361, 1367, 148 P.3d 727, 732 (2006); *Johnson v. State*, 122 Nev. 1344, 1353, 148 P.3d 767, 773 (2006). We are not persuaded that it is appropriate to alter that holding. *See Miller*, 124 Nev. at 597, 188 P.3d at 1124.

Haberstroh further argues that reversal of his death sentence is warranted because the prosecution introduced false and misleading evidence to support the under-sentence-of-imprisonment aggravating circumstance. Because he did not object to the challenged evidence, his claim is reviewed for plain error. *Valdez*, 124 Nev. at 1190, 196 P.2d at 477. Haberstroh points to a federal agent's explanation of what it means to expire a sentence. Because the agent's explanation did not take into account sentence credits that may accelerate the expiration of a sentence, he argues that the testimony was misleading and prejudicial. We conclude that he has not shown plain error as other evidence showed that he was on parole at the time of Kitowski's murder.

Finally, Haberstroh argues that insufficient evidence supports the under-sentence-of-imprisonment aggravating circumstance. In this, he contends that the State should have introduced official documentation establishing that he was on parole at the time of Kitowski's murder or

testimony from a federal parole officer or other official charged with determining when his federal sentence expired, instead of presenting hearsay evidence and testimony from witnesses who had no personal knowledge of his parole status. While the type of evidence Haberstroh suggests was not presented, there is no authority compelling to State to prove the aggravating circumstance through any particular means. Further, the State presented sufficient evidence from which the jury could infer that he was under a sentence of imprisonment at the time of the murder. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The jury learned that Haberstroh had two 1974 convictions pursuant to the National Motor Vehicle Theft Act (NMVTA) (also known as the Dyer Act) for which he received two concurrent six-year prison terms. He was paroled from those offenses on February 16, 1978. While on parole, he absconded but was eventually apprehended and incarcerated at the Leavenworth county jail in Kansas. On July 18, 1978, he attempted to escape from the Leavenworth County jail. On August 3, 1978, he pleaded guilty to escape and was sentenced to five years in prison to run consecutively to the two concurrent six-year terms he received on the NMVTA convictions. His sentences related to the NMVTA convictions expired on May 2, 1980. Haberstroh then started serving the sentence for the escape conviction. He was paroled on the escape conviction on December 2, 1983, had his last contact with his parole officer in January of 1985, and thereafter absconded from parole. A bench warrant was issued on August 28, 1985. Testimony was introduced explaining that a sentence does not continue to run when a person is in absconder status and that from the time the bench warrant issued until the time of Kitowski's

murder, Haberstroh was still under the sentence for the Leavenworth escape. The jury also learned that Haberstroh admitted at his previous trial that he was a parole violator when he "came out here," apparently referring to Las Vegas, which his presentence investigation report indicates occurred in February of 1985.

*Prior-violent felony aggravating circumstance*

The prior-violent-felony aggravating circumstance is based on Haberstroh's felony conviction for escape from the Leavenworth County jail. During his escape, he threatened jail officer Michael Weber with a shank. The State supported this aggravating circumstance in part by introducing Weber's testimony from Haberstroh's first trial where he described the circumstances of Haberstroh's escape. Haberstroh pleaded guilty to escape. He complains that this aggravating circumstance is invalid because the State failed to present sufficient evidence to show that the felony escape conviction involved the use or threat of violence for the purpose of NRS 200.033(2)(b) in accordance with *Redeker v. Eighth Judicial Dist. Court*, 122 Nev. 164, 127 P.3d 520 (2006).

*Redeker* addressed what evidence may be relied on to satisfy NRS 200.033(2)(b). 122 Nev. at 172, 127 P.3d at 526. In that case, the State alleged a prior-violent-felony-conviction aggravating circumstance based on the defendant's second-degree arson conviction, which was based on a guilty plea. *Id.* at 168, 127 P.3d at 523. We concluded that where, as with second-degree arson, it is not readily apparent from the statutory elements that the offense involves the use or threat of violence, the factfinder may look beyond the statutory elements to determine whether the prior offense involved the use or threat of violence but that NRS 200.033(2)(b) "does not indicate that no limits should be placed on the sort

SUPREME COURT
OF
NEVADA

(O) 1947A

of evidence that can be considered in making that determination." *Id.* at 172, 127 P.3d at 526. In those circumstances, the fact-finder may consider the charging documents, jury instructions, written plea agreement, transcript of plea colloquy, and "any explicit factual finding by the district court judge to which [the defendant] assented" underlying the prior conviction to determine whether the offense involved the use or threat of violence for purposes of NRS 200.033(2)(b). *Id.* at 172-73, 127 P.3d at 526; *see Hidalgo v. Eighth Judicial Dist. Court*, 124 Nev. 330, 335-36, 184 P.3d 369, 374 (2008).

Officer Weber's testimony revealed that Haberstroh threatened him with a shank during the escape but that testimony is not the type of evidence that may be used to establish this aggravating circumstance under *Redeker* because it did not involve any explicit factual finding by the trial judge to which Haberstroh assented. Although the documentary evidence introduced—copies of his petition to plead guilty, the indictment, and the judgment of conviction—may be considered under *Redeker*, none of those documents indicate that Haberstroh's escape involved the use or threat of violence. Because insufficient evidence supports the aggravating circumstance, it is invalid.[4]

Because the prior-violent felony aggravating circumstance is invalid, we must consider whether Haberstroh's death sentence may be upheld. *See Clemons v. Mississippi*, 494 U.S. 738, 741 (1990) (holding that

---

[4]Since we conclude that the prior-violent-felony aggravating circumstance was not validly established, but that the error does not merit reversal, we do not consider Haberstroh's remaining challenges to the validity of this aggravator.

"the Federal Constitution does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless-error review"); *Pertgen v. State*, 110 Nev. 554, 563, 875 P.2d 361, 366-67 (1994) ("Reweighing involves disregarding the invalid aggravating circumstances and reweighing the remaining permissible aggravating and mitigating circumstances.").

In mitigation, the jury heard evidence concerning Haberstroh's family history and background. His parents and older siblings were deceased. The family was plagued by alcoholism; his mother drank alcohol while pregnant with him. Haberstroh's sister, Judith, was tasked with caring for her younger siblings, including Haberstroh. Judith resented that duty and physically abused her charges, with Haberstroh receiving the brunt of the abuse. On at least one occasion, Judith placed him in a dark closet for hours. An aunt discovered him in the closet; it appeared that he had been hung by his neck and was in and out of consciousness. His father struck him with a belt with sufficient force to leave welts. When Haberstroh was a teenager, his father engaged him in fist fights as a disciplinary tool. His mother imposed punishment by requiring him to kneel on the floor on top of dry grains of rice. Haberstroh dropped out of school in the sixth grade. Psychological evaluations completed while Haberstroh was in elementary school revealed that he had an IQ of 87, had deep feelings of inadequacy, suffered from the effects of his mother's alcoholism and emotional instability, suffered from depression, and had issues with females in his life, including his mother. He acted out in class, disturbed other children, and acted immaturely for

his age. Haberstroh was prescribed tranquilizers, which he took four times a day. When he reached 16 years old, Haberstroh began huffing paint on a regular basis. He married at age 17 but divorced within one year and joined the Navy. His abuse of alcohol and other substances continued, and he had disciplinary problems during his brief time in the Navy. After his discharge from the service, Haberstroh's alcohol abuse continued, and he was unable to maintain steady employment and engaged in various criminal activities. No family members have visited Haberstroh during his incarceration.

The jury also heard evidence that Haberstroh had not engaged in any assaultive misconduct in the past 27 years of incarceration and no disciplinary infractions in the past 10 years of incarceration. Previous confinements in the federal prison system noted two fistfights. He obtained his GED in 1981, which decreased the likelihood that he would be involved in serious violence in prison. His age, 58, also suggested a lower risk of violence in prison. Haberstroh suffers from a number of health issues, including fatigue, shortness of breath, low heart rate, diabetic neuropathy, peripheral artery disease, cardiovascular disease, and high blood pressure. His diabetes places him at risk for diabetic retinopathy, which can lead to blindness and kidney damage. He is also in need of dental care and routine health screenings. A neuropsychologist explained that Haberstroh suffered from mental impairments that are consistent with fetal alcohol syndrome and that had been diagnosed with attention deficit hyperactivity disorder (ADHD). A psychologist related that Haberstroh suffered from cognitive deficiencies and that he has adjusted well to incarceration due the highly structured prison environment. Finally, the jury learned about how parole operates and the

Supreme Court
OF
Nevada

(O) 1947A

factors the Parole Board considers in determining whether parole should be granted, as well as the conditions of confinement at the Ely correctional facility.

As other matter evidence, *see* NRS 175.552(3), the State introduced evidence of Haberstroh's extensive juvenile and adult record, including arrests/convictions for multiple instances of larceny of a motor vehicle, possession of burglary tools, theft of money, forgery, absconding from juvenile probation, eluding a police officer, two convictions under the NMVTA, escapes from incarceration, numerous parole violations, strong-arm robbery, unauthorized use of a vehicle, and trespassing. The jury also heard evidence that Haberstroh sexually assaulted a woman after abducting her at knifepoint from a grocery store parking lot. Another woman testified about an incident on May 1, 1986, where a man abducted her from a grocery store parking lot, forced her to drive her car to a secluded area, and sexually assaulted her. The State introduced evidence linking Haberstroh to thefts involving several women in August 1986— approximately one month after Kitowski's murder; he was never charged with those offenses. While the prior-violent-felony aggravating circumstance is invalid, the jury could nevertheless consider evidence that Haberstroh threatened a guard with a shank to effectuate his escape from the Leavenworth jail in selecting the appropriate sentence after weighing the aggravating and mitigating circumstances. *See* NRS 175.552(3) ("During the hearing, evidence may be presented concerning aggravating and mitigating circumstances relative to the offense, defendant or victim and on any other matter which the court deems relevant to the sentence, whether or not the evidence is ordinarily admissible."); *Browning v. State*, 124 Nev. 517, 526, 188 P.3d 60, 67 (2008) (observing that the focus of a

SUPREME COURT
OF
NEVADA

(O) 1947A

20

capital penalty hearing is on a defendant's "character, record, and the circumstances of the offense"). Kitowski's mother, stepfather, and two brothers testified about the devastating impact of Kitowski's murder and described her as a caring, loving, helpful, and phenomenal sister. Kitowski's 28-year-old son, an infant when she was murdered, is unable to speak about his mother's death.

Considering all of the evidence presented, we conclude that the jury would have found Haberstroh death eligible absent the prior-violent-felony aggravating circumstance. The remaining under-sentence-of-imprisonment aggravating circumstance is compelling as it indicates that Haberstroh had not been amenable to rehabilitation or restraint. Further, in light of his extensive juvenile and adult criminal history, including the sexual assault of two women under circumstances similar to Kitowski's murder, we conclude that the jury would have imposed death absent the prior-violent-felony aggravating circumstance.

*Mandatory review*

NRS 177.055(2) requires that this court review every death sentence and consider whether (1) sufficient evidence supports the aggravating circumstances found, (2) the verdict was rendered under the influence of passion, prejudice or any other arbitrary factor, and (3) the death sentence is excessive. First, as explained above, the prior-violent-felony aggravating circumstance is invalid because the State failed to prove beyond a reasonable doubt that Haberstroh's conviction for escape involved the use or threat of violence under NRS 200.033(2)(b), but the under-sentence-of-imprisonment aggravating circumstance was proved through evidence presented during the penalty hearing. Second, nothing in the record indicates that the jury acted under any improper influence in

imposing death. Although the jurors did not find all of the mitigating circumstances Haberstroh proffered, at least one juror found that the murder was mitigated by his family history of alcoholism, the physical abuse he suffered from his parents and older siblings, his mental deficiencies, and his current age. These findings evidence a reflective jury. Third, the death sentence is not excessive. Although Haberstroh presented credible mitigation evidence, the nature and circumstances of his crimes, his lengthy criminal record, and evidence of his other sexual assaults of women are compelling factors that favor a death sentence. Under the circumstances, we conclude that based on the crime and the defendant, the death sentence is not excessive. *See generally Dennis v. State*, 116 Nev. 1075, 1084-87, 13 P.3d 434, 440-42 (2000) (discussing and applying excessiveness analysis).[5]

---

[5]We reject Haberstroh's constitutional challenges to his death sentence based on a 28-year delay between the time the offenses occurred in 1986 and the penalty hearing in 2013, *see Jones v. State*, 539 S.E.2d 154, 158-59 (Ga. 2000) (finding meritless a "'waiting for execution is intolerably cruel' argument"), the lack of a constitutionally adequate clemency process, *see Nunnery v. State*, 127 Nev., Adv. Op. 69, 263 P.3d 235, 257 (2011), and the failure of the capital penalty scheme to genuinely narrow the defendants eligible for the death penalty, *see Leonard v. State*, 117 Nev. 53, 82-83, 17 P.3d 397, 415-16 (2001). We further reject Haberstroh's claim of cumulative error, as the cumulative effect of any errors established do not require reversal of the death sentence. *See Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) (noting factors to consider in cumulative-error analysis).

Because review of this appeal reveals no errors that warrant reversal of Haberstroh's death sentence, we

ORDER the judgment of the district court AFFIRMED.[6]

_____ ,C.J.
Hardesty

_____ , J.
Cherry

_____ , J.
Gibbons

_____ , J.
Parraguirre

_____ , J.
Saitta

_____ , J.
Pickering

cc:    Hon. Elissa F. Cadish, District Judge
       Special Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

_____

[6]The Honorable Michael Douglas, Justice, did not participate in the decision in this matter.